## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 1998-KA-01090-SCT

*TOMMY RICHARDSON a/k/a TOMMYE DEWAYNE RICHARDSON*

*v.*

*STATE OF MISSISSIPPI*

### ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 05/19/1998 |
| TRIAL JUDGE: | HON. LARRY EUGENE ROBERTS |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JOE M. RAGLAND |
| | ROBERT O. WALLER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: PAT S. FLYNN |
| DISTRICT ATTORNEY: | BILBO MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 9/14/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/5/2000 |

**EN BANC.**

**BANKS, PRESIDING JUSTICE, FOR THE COURT:**

¶1. The motion for rehearing is granted. The original opinions are withdrawn, and these opinions are substituted therefor.

¶2. In this capital rape case we hold that the trial court erred by failing to grant defendant a lesser-included offense instruction where the lesser offense was charged in the indictment and by denying defendant's request for DNA testing at county expense, where the presence of unidentified seminal fluid was considered throughout this case as further proof of sexual penetration of the victim.

### I.

¶3. Tommy Richardson was indicted for capital rape and/or lustful touching of a child under Miss. Code Ann. §§ 97-3-65 & 97-5-23. He was convicted in the Lauderdale County Circuit Court of capital rape and sentenced to life in prison.

¶4. Richardson, thirty-eight, was charged with raping his cousin, who was twelve years of age, while visiting in the home of relatives. The State presented evidence suggesting that Richardson, who claims to have had mental problems since age six, entered his cousin's bedroom after everyone had gone to bed and

proceeded to commit the crime. Richardson argues it was a crime of lustful touching of a child, as he withdrew from the encounter prior to penetration.

¶5. Shortly before trial, it was revealed to both the State and the defense that the presence of seminal fluid had been detected on one of the vaginal slides taken with the "rape kit." The defendant sought the funds to conduct DNA testing on that fluid. His request was denied. Nevertheless, throughout the trial the presence of seminal fluid was relied upon as evidence that there had in fact been penetration.

¶6. The trial court denied the defendant's request for a lesser offense instruction and denied requests from the jury, made during its deliberations, for further instruction on the definition of penetration and to be allowed to see the victim's statement.[1] The jury then convicted Richardson of capital rape. This appeal ensued.

## II.

¶7. The standard of review of the trial court's denial of expert assistance is that an abuse of discretion occurred such that the defendant was denied due process whereby the trial was fundamentally unfair. *Coleman v. State*, 697 So.2d 777, 780 (Miss. 1997) (citing *Hunt v. State*, 687 So.2d 1154 (Miss.1996) (other citations omitted)). "'Undeveloped assertions' that expert assistance will be helpful are insufficient."*Id*. (citing *Griffin v. State*, 557 So.2d 542, 550 (Miss.1990)).

¶8. On the day before the trial, both parties learned that semen had been found by the state crime lab on one of the slides of material taken from the victim's vagina as part of the rape kit. Richardson requested that the trial court order the DNA testing. Richardson's position was that he was indigent and unable to have the tests done on his own. The trial court denied the motion, finding that Richardson had no evidence that the victim had ever been sexually active. The trial court ruled that there was no justification under the circumstances to order the State to pay for the DNA testing, as Richardson had not even indicated, as of the day before trial, a desire to submit a saliva sample or blood sample. The judge stated he was not going on a "fishing expedition," and he also noted that the State was not going to use a DNA expert in order to convict the defendant.

¶9. After the trial, Richardson's mother hired counsel who filed a Motion for DNA Testing and Suspension of Briefing or in the Alternative Motion to Remand to Trial Court for DNA Testing, which was denied by this Court.

¶10. A defendant must demonstrate a substantial need in order to justify the trial court expending public funds for an expert to assist the defense. *Holland v. State*, 705 So.2d 307, 334 (Miss. 1997). Concerning the question of appointment of a pathologist and an investigator, this Court held in *Holland* that the accused must offer concrete reasons, not just undeveloped assertions, that the assistance would be beneficial. *Id*.

¶11. Richardson cites *Polk v. State* for the proposition that due process considerations require that a defendant who is the subject of DNA testing must have access to an independent expert who can independently evaluate the DNA evidence presented against him. *Polk v. State*, 612 So.2d 381, 393-94 (Miss. 1992). Here, the issue is not whether the defendant was allowed to have an expert to evaluate the DNA evidence, but rather was the defendant denied the right to have the DNA tests administered. *Polk* is not applicable. Nevertheless, it has never been said that a defendant is only entitled to expert witnesses

where the State proposes to put forth experts on the subject.

¶12. This Court has held since *Polk* that "[d]etermination of whether the State must pay for an expert witness for an indigent defendant must be made on a case by case basis." *Coleman v. State*, 697 So.2d at 782 (citing *Davis v. State*, 374 So.2d 1293, 1297 (Miss.1979)). "This Court has previously held that DNA evidence is not always valuable enough to warrant a trial delay." *Id*.; *see Rhymes v. State*, 638 So.2d 1270, 1274 (Miss. 1994) (holding that trial delay for DNA testing was attributable to the State, but was mere negligence)). "Tennessee and North Carolina have held that a criminal defendant must show a 'particularized necessity' to justify funds for independent DNA experts or analysis." *Coleman v. State*, 697 So.2d at 782. "Considering the expense and time required to conduct DNA testing, we will not require the State to pay for DNA testing where there is no showing that it would significantly aid the defense." *Id*.

¶13. In *Coleman*, the Court held that DNA testing would not aid the defendant. *Id*. There, the defendant admitted to having sex with the murder victim, who was a prostitute. The Court found that having a DNA test done on the victim would not "significantly aid the defense." *Id*. The defendant argued that he was not the murderer because the semen (DNA sample) was found in the victim's anus. The defendant argued that he did not have anal intercourse with the victim. *Id*. The Court held that because the evidence taken from the anal swab did not necessarily connect the murder to the anal sex, the DNA evidence was not particularly helpful. *Id*.

¶14. The Court's holding in *Coleman* was based on the facts of that case. The facts here are different. Here, Richardson contests the fact of penetration. While most of the evidence supports a finding of penetration, without the seminal fluid evidence that finding rests almost entirely on the testimony of the twelve-year-old victim who admitted that she was in a dreamlike state during a part of the incident. Clearly, the State relied upon the evidence that semen was present for the inference that the defendant did in fact sexually penetrate the girl. The trial court relied upon the presence of seminal fluid in denying a directed verdict and also in denying a lesser-offense instruction.

¶15. Under these circumstances the DNA evidence would be relevant and material. It could significantly aid the defense by showing that the semen sample found was not his, thus eliminating the semen as objective evidence of penetration. The fact that it could show otherwise does not diminish its relevance or materiality.

¶16. Both the State and the defendant were notified at the same time that there was a seminal DNA sample. The fact that the State did not present DNA results before the jury does not deny the defendant the right to have the evidence tested. The defendant should be permitted to inspect tangible evidence that might be used against him or which might be useful in his defense. *Armstrong v. State*, 214 So. 2d 589, 596 (Miss. 1968).

¶17. The defendant has a right to have an expert analyze DNA evidence when the State tenders an expert using that evidence. *Polk v. State*, 612 So. 2d at 393-94. The State's consistent reference to the semen, suggesting that it was the defendant's, entitles the defendant to the opportunity to show that it was not his. It strains reason to deny the defendant's request to test evidence which he is entitled to have an expert analyze.

¶18. The "determination of whether the State must pay for an expert witness for an indigent defendant must be made on a case by case basis." *Davis v. State*, 374 So. 2d at 1297. In this case, the State should pay.

¶19. The Supreme Court of the United States has made it clear that a defendant is entitled to exculpatory evidence. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L. Ed. 2d 215 (1963). Moreover, the Court has set out three factors for determining whether a criminal defendant is entitled to the aid of an expert as a "basic tool" for his defense. *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L. Ed. 2d 53 (1985). Those factors are as follow: 1) the private interest that will be affected by the action of the State; 2) the governmental interest that will be affected if the safeguard is to be provided; and 3) the probable value of the additional or substitute procedural safeguards that are sought, and the risk of an erroneous deprivation of the affected interest if those safeguards are not provided. 470 U.S. at 77, 105 S.Ct. at 1093.

¶20. Applying those factors in this case, it cannot be gainsaid that DNA evidence has become a "basic tool" in criminal proceedings. Here, as stated in *Ake*, "the private interest in the accuracy of a criminal proceeding that places an individual's life or liberty at risk is almost uniquely compelling." *Id*. The probative value of the DNA evidence is great. This Court has recognized that DNA evidence is a reliable form to identify a person. *Polk*, 612 So. 2d at 387. Here, the DNA test would show whether it was Richardson's semen. Applying these factors, the trial court should have allowed the defendant to test the evidence.

¶21. The trial court suggests that the defendant should have presented blood evidence if he wanted to contradict the semen sample. Specifically, the trial court said: "I see no justification from what I've heard now at this time to order the county to pay for the cost of DNA analysis. I mean, as far as I know right now, the last day before trial, the defendant has not even indicated a desire to submit a saliva sample or blood sample to see if the semen matches the secretor status or not. Are the blood types the same? I mean, that hasn't even been done yet, and that's a relatively inexpensive process."

¶22. In that, the trial court is correct. Intermediate blood typing and comparison could have excluded Richardson as the semen secretor. Of course, if the State wanted a blood sample from the defendant to see if it matched the secretor, then the State could request a blood sample. *Birchfield v. State*, 412 So. 2d 1181, 1183 (Miss. 1982). The defendant requested a DNA test. That request arose on the eve of trial because the semen came to light on the eve of trial. We do not read his request for DNA testing to exclude the intermediate step of comparing body fluids for type. That is a process which could also have excluded him as the secretor. By the very nature of DNA testing, a defendant, in order to avail himself of the process, must give sample DNA. Certainly, the trial court could have conditioned any order for DNA testing upon the completion of the intermediate blood typing comparison.

¶23. Because the trial court should have allowed the defendant to test the semen sample, we remand this matter to that court. But for the failure to give a lesser-offense instruction, the conviction could be held in abeyance pending the result of such testing. Because we order a new trial on other grounds, however, there is no reason to resort to that procedure.

## III.

¶24. Richardson argues that the trial court should have given an instruction on gratification of lust as a lesser-included offense to capital rape because of the form of the indictment, which read, in part: "Tommy D. Richardson, a male person over the age of 18 years ... did wilfully, unlawfully, feloniously and knowingly, engage in sexual intercourse with . . . a female person under the age of fourteen (14) years, and if not this greater crime, then the lesser crime of Lustful Touching of a Child, by feloniously, and knowingly, for the purpose of gratifying his lust or indulging his depraved licentious sexual desires, rubbing, touching, or handling . . . a female child under the age of fourteen (14) years, with his hand or other body parts . . . in

violation of Section 97-3-65 and 97-5-23, Mississippi Code of 1972 . . . ." Richardson also argued that the jury needed guidance for the legal definition of "penetration" and that the refusal of Instruction C-3 left the jury without this clarification.

¶25. The trial court refused the requested instruction on gratification of lust expressing the view that the evidence did not support such an instruction and concluding further that, regardless of the indictment, gratification of lust is not a lesser-included offense to capital rape.

¶26. The lustful touching of a child under fourteen is not necessarily a lesser *included* offense of statutory rape. Lustful touching is, however, a lesser related offense. Upon proper request, the defendant is entitled to a lesser-related-offense instruction the same as he would be entitled to a lesser-included-offense instruction when there is evidence warranting such instruction. *Griffin v. State*, 533 So.2d at 447-48. The evidentiary standard is the same as for lesser-included-offense instructions and is laid out in *Harper v. State*, 478 So.2d 1017, 1021 (Miss. 1985). "A lesser included offense instruction should be granted unless the trial judge--and ultimately this Court--can say, taking the evidence in the light most favorable to the accused, and considering all reasonable favorable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of the lesser included offense." *Harper v. State*, 478 So.2d at 1021.

¶27. Here, there is evidence for an instruction on lustful touching. The victim was twelve years of age at the time of the alleged incident, while the defendant was thirty-seven. There was testimony from the victim, who was thirteen at time of trial, that Tommy Richardson pulled down her shorts and underwear, then fondled, kissed and licked between her legs. Richardson told the police in response to the question of "[h]ow much of your penis did you get in, very much," he replied, ambiguously, "nah, it wasn't nothing . . . not even the head really." Richardson stated that at that point he realized that he was wrong and stopped. Although the child testified that there was penetration, it is up to the jury to determine whether there was actual penetration. It is telling that the jury, after retiring, felt compelled to ask both for a definition of penetration and to read the victim's statement. Both requests were refused.

¶28. "We have repeatedly held that in a criminal prosecution the jury may accept the testimony of some witnesses and reject that of others, and that they may accept in part and reject in part the evidence on behalf of the state or on behalf of the accused." *Watson v. State*, 722 So.2d 475, 479 (Miss. 1998) (quoting *Gathright v. State*, 380 So.2d 1276, 1278 (Miss.1980)). Additionally, as we noted in *Watts v. State*, 717 So.2d 314, 319 (Miss. 1998):

> 'there is no such thing as a directed verdict of guilty in a criminal case, either on the principal charge in general or on any of its components. Its logic requires the determination that the proof offered by the State where not substantially contradicted must perforce be believed by the jury and so acted upon in their verdict. True, the evidence that Fairchild participated in a robbery in this case is substantial. What the trial judge has done, however-- following the theory advanced by the Fifth Circuit--has been to find as a matter of law that Fairchild is guilty of robbery before the case is ever submitted to the jury. This constitutionally he has no authority to do.'*Fairchild v. State*, 459 So.2d at 800.

The court cannot refuse the lesser-offense instruction based on an assumption that the jury will find penetration. Indeed, the trial court explicitly and correctly instructed the jury to determine beyond a reasonable doubt whether there was in fact penetration. Concomitant with that should have been the instruction that reasonable doubt about whether there was penetration could lead to a conviction for the

lesser offense of fondling.

¶29. Moreover, this Court has suggested that when an indictment lists rape as a charge and the defendant asks for an instruction on the lesser offense of lustful touching of a child under fourteen, the defendant may be entitled to that instruction if it was necessarily charged in the indictment. *Hailey v. State*, 537 So.2d 411, 416 (Miss. 1988)("[I]f under the facts as alleged in the indictment a lesser offense is necessarily included, then a conviction of the lesser offense may be proper.").

¶30. In *Hailey*, a concurring opinion by Justice James L. Robertson explored the nuances between a lesser-offense instruction offered by the State as opposed to those requested by the defense. It is those offered by the State which must pass fair notice muster under the due process clauses of our state and federal constitutions. The Court held that the indictment there did not sufficiently notify Hailey that he may be charged with child fondling. *Id*. at 416.

¶31. Here, on the other hand, the indictment states Tommy Richardson did "engage in sexual intercourse with [the victim], a female person under the age of fourteen (14) years, **and if not this greater crime, then the lesser crime of Lustful Touching of a Child, by feloniously, and knowingly, for purpose of gratifying his lust or indulging his depraved licentious sexual desires, rubbing, touching, or handling [the victim], . . . , with his hand or other body parts . . . .**" (emphasis added). It follows that either the State or the defense could have requested the instruction in this case.

¶32. The trial court erred in refusing Richardson's instruction on the lesser related offense of lustful touching of a child.

## IV.

¶33. Richardson asserts that by keeping the term DNA before the jury the prosecution violated Rule 8.4(d) of the Mississippi Rules of Professional Conduct by "engag[ing] in conduct that is prejudicial to the administration of justice." He also argues that the prosecutor kept the public defender "in the dark" about the seminal fluid found on the slides. The State responds that the references to DNA by the State were in direct response to remarks made by the defense attorney with one exception. The State considered this to be trial tactics to counter the State's evidence of semen on the vaginal swab and further noted that there were no objections from either side.

¶34. No objections were raised at trial to the questions Richardson now assigns as error and thus they are procedurally barred. *Watts v. State*, 733 So.2d at 228. The only authority Richardson cited under this issue is Rule 8.4 of the Rules of Professional Conduct which states that it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice. We find no professional misconduct in the prosecutor's statements concerning DNA where the defense first raised the subject of DNA, mentioning it in his opening statement and in cross-examination.

¶35. There was no prosecutorial misconduct in the mentioning of DNA by the prosecution, nor was there any objection made by the defense. The defense mentioned DNA testing in his opening statement and again when he cross-examined the treating physician. As the State pointed out, the prosecution asked the crime lab technician limited questions concerning DNA testing in response to the questions the defense had asked the treating physician. The defense also asked extensive questions of the crime lab technician during cross-examination.

¶36. From the record there is no evidence to establish that the prosecution withheld information concerning the results of the crime lab analysis. The lab analysis began on March 26, 1998. The pre-trial hearing was held on May 15, 1998. Richardson asserted that he received the information concerning the lab results on the day before the trial. The record reflects that defense counsel called counsel for the State a week before the trial and asked about the results of the lab tests. The prosecution had not received the reports at that time. The day before the trial another phone call was made to the crime lab, whereupon the results were then sent to the State. The record reflects that the crime lab was "backlogged" and did the best it could to get the results to the State as soon as the reports were done. The State sent the results to the defense as soon as it received them. The State did not request that DNA tests be conducted since that would take another six months. The State had enough evidence without the DNA test in order to proceed to trial without it. There was simply no evidence before that court that the prosecution withheld the crime lab results from the defense. The defendant has not been denied his rights to a fair trial. There is no merit to this issue.

## V.

¶37. Richardson argues that he was not mentally capable of properly conferring with appointed counsel and that when the trial court overruled his motion for psychiatric examination the court committed error. The State respond that the defense presented no medical evidence as to his emotional or mental condition upon his motion for psychiatric examination other than his testimony from the suppression hearing where at the time he gave his statement, he stated that he had taken two prescription medications, a muscle relaxer and a migraine headache remedy.

¶38. We have reversed cases on the lack of a physical or mental examination, but in those cases the trial court had medical evidence presented as a basis for the order. *See, e.g.*, ***Jaquith v. Beckwith***, 248 Miss. 491, 157 So.2d 403 (1963); ***McGinnis v. State***, 241 Miss. 883, 133 So.2d 399 (1961); ***Eastland v. State***, 223 Miss. 195, 78 So.2d 127 (1955). In ***Jaquith***, the Court held that there must be evidence indicating a reasonable probability that the defendant is incapable of making a rational decision. 157 So. 2d at 408.

¶39. Richardson did not present any evidence to indicate that he was not capable of making a rational decision. During questioning, Richardson stated that he had been in the VA Hospital psychiatric ward and that he had been in a drug "rehab" program. As the State correctly pointed out, Richardson waited until the Friday before trial to ask for a hearing regarding the need for psychiatric examination, and then only made general statements concerning the effect of the medications that he was and had been taking. The judge noted that the defendant did not exhibit any slowness in response to questions during his examination and denied use of any mind-altering substance, drugs, or narcotics.

¶40. Richardson argued that he did not understand the nature of the proceedings against him since he thought that he would receive death or life imprisonment if he maintained his innocence. Richardson cites *Howard v. State*, 701 So.2d 274 (Miss. 1997), where the test for competency mandated that the defendant be able to perceive and understand the nature of the proceedings and rationally communicate with his attorney. *Id.* at 280-81. Richardson also cites ***Conner v. State***, 632 So.2d 1239,1248 (Miss. 1993) which held that the defendant must be able to converse with others. Richardson argues that he was unable to converse with his mother.

¶41. In *Evans*, this Court held:

When making the ruling on competency, the trial court specifically stated that "[a]s stated in *Medina v. California*, 505 U.S. 437, 448, 112 S.Ct. 2572 [2578-79], 120 L.Ed.2d 353 (1992), reh'g denied, 505 U.S. 1244, 113 S.Ct. 19, 120 L.Ed.2d 946 (1992), the burden of proof in this case rests upon the movants to prove by substantial evidence that the defendant is mentally incompetent to stand trial." The trial court concluded that the movants "failed in the presentment of their case."

In *Emanuel v. State*, 412 So.2d 1187, 1188-89 (1982), this Court announced the procedure to be utilized where there is a serious question about an accused's sanity or competency to stand trial. In *Emanuel*, this Court specifically held "[i]t naturally devolves upon the defendant to go forward with the evidence to show his probable incapacity to make a rational defense." *Id*. at 1188.

The procedures set forth in *Emanuel* have been approved by the United States Supreme Court. *Griffin v. State*, 504 So.2d 186, 191 (Miss.1987). In *Griffin*, this Court held that although on the federal level the prosecution is required to prove the competency of a criminal defendant by a preponderance of the evidence, this Court would not impose a "greater burden on state officials, especially in light of the fact that our procedures for determining competency are specifically designed to afford the accused due process of law and ensure that he is capable of making a rational defense prior to being tried for the crime for which he is accused." *Id*. (citing *Emanuel*, 412 So.2d 1187 (Miss.1982)). In *Griffin*, this Court held that the State was not required to prove competency beyond a reasonable doubt or by clear and convincing evidence.

*Evans v. State*, 725 So.2d 613, 660 (Miss. 1997). *Evans* further held that once the trial court has made a finding that the evidence does not show a probability that the defendant is incapable of making a rational defense, the decision will not be overturned unless the finding was manifestly against the overwhelming weight of the evidence. *Id*. at 661. The evidence must show more than a possibility, it must show there is a probability that the defendant is incapable of making a rational defense with the judge weighing the evidence. *Id*. In *Evans*, this Court held that there was no dispute that the defendant had been treated for various mental disorders but that "one suffering from mental illness may be rational and competent to stand trial." *Id*. at 664. In the case sub judice, the trial judge's decision is not against the overwhelming weight of the evidence. The judge found that the defendant was capable of answering the questions presented to him in a rational manner. This issue is without merit.

## VI.

¶42. Richardson claims that his statement made to the police at the time of his arrest should have been suppressed since he was using prescription drugs at the time.

¶43. "When a trial judge concludes that a 'confession is admissible, his finding becomes a finding of fact which will not be reversed on appeal unless it is manifestly in error or contrary to the overwhelming weight of the evidence.'" *Sills v. State*, 634 So.2d 124, 126 (Miss. 1994) (citing *Pinkney v. State*, 538 So.2d 329, 342 (Miss.1988)). "Our scope of review of a trial court's suppression hearings findings is that '[w]e may ... disturb such a finding only where there is an absence of substantial credible evidence supporting it.'" *Id*. (citing *Nicholson v. State*, 523 So.2d 68, 71 (1988) (quoting *Ray v. State*, 503 So.2d 222, 224 (Miss.1986)). "Our task, therefore, is to determine if there is substantial credible evidence in the record supporting the trial judge's findings." *Id*.

¶44. We cannot say from the record before us that the trial judge's findings were manifestly in error or contrary to the overwhelming weight of the evidence. *Id*. In Richardson's reply brief, he argued that his *Miranda* rights were violated and cited to *Moran v. Burbine*, 475 U.S. 412 106 S.Ct. 1135, 89 L. Ed. 2d 410 (1986), where the Court held that the relinquishment of the right must be voluntary such that it was the product of a free and deliberate choice rather than "intimidation, coercion or deception" and it must have been made with full awareness, "both of the nature of the right to be abandoned and consequences of the decision to abandon it." *Id*. at 421. "Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived." *Id*.

¶45. As in *Moran*, the defendant voluntarily gave his statement and the record is "devoid of any suggestion that the police resorted to physical or psychological pressure to elicit statements." *Id*. Richardson argued that he was mentally ill and on medication and that the interrogating officer promised Richardson's mother that if her son would just confess things would go well with him. Richardson argues that Richardson's mother was kept in the dark relating to her son's *Miranda* rights.

¶46. The record reveals that the chief investigator denies telling Richardson that things would be easier for him if he confessed. The officer did not remember the defendant indicating that he did not understand the questions that were being asked of him but he did remember that he made a phone call. Since Richardson was capable of making rational decisions, we find that he also made a knowing waiver of his *Miranda* rights and gave his statement free of his own will. There is no indication in the record that any officer told Richardson or his mother that if he confessed that things would be better for him. The mother indicated that it was her impression, after talking to her son and the investigator, that he needed to confess. Richardson did not ask for counsel. We see no reason to disturb the circuit court's conclusion that Richardson waived his *Miranda* rights without being coerced and that he had the requisite level of comprehension to understand the decision to do so. *Moran,* 475 U.S. at 421. This assignment of error is without merit.

## VII.

¶47. Richardson raised several claims of ineffective assistance of counsel. Because we reverse on other grounds we need not address these.

## VIII.

¶48. The remaining claim is that the verdict was against the overwhelming weight of the evidence. In view of our reversal and remand for a new trial based on other grounds, we need not address this issue.

## CONCLUSION

¶49. We conclude that the trial court erred in denying the defendant DNA testing at county expense and erred in denying the lesser-related-offense instruction. Accordingly, the judgment is reversed, and this case is remanded for a new trial and further proceedings consistent with this opinion.

¶50. **REVERSED AND REMANDED.**

**PRATHER, C.J., PITTMAN, P.J., McRAE AND DIAZ, JJ., CONCUR. SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY MILLS AND COBB, JJ. WALLER, J., NOT PARTICIPATING.**

**SMITH, JUSTICE, DISSENTING:**

¶51. The majority remands this case in order to allow Richardson a state-funded DNA test, because it believes the results could be exculpatory. However, it improperly reached its decision by discounting strong evidence besides the questionable seminal fluid that was presented to the jury. Richardson's confession and the testimony of the victim standing alone were enough to convict Richardson. The majority should have followed our previous opinion which denied access to state funding for the DNA test, and therefore, I respectfully dissent.

¶52. In *Coleman v. State,* 697 So. 2d 777 (Miss. 1997), we held that denial of DNA testing is not reversible error where the evidence would not exonerate the defendant. There, it was found that the "evidence did not necessarily connect the murder" to the crime. The majority argues if the DNA results prove that the seminal fluid is not that of Richardson, then he could be excluded as the perpetrator. But the majority wrongfully discounts the testimony of the girl and Richardson's confession.

¶53. *Coleman* states that the facts must be considered on a case-by-case basis and that a defendant must prove that the testing would significantly aid in the defense. *Coleman,* 697 So.2d at 781. The facts of the case at bar indicate that regardless of DNA results that might prove the seminal fluid was not Richardson's, reasonable jurors could nonetheless come to the same conclusion of guilt that was reached at trial. Richardson failed to prove that the test results could successfully exonerate him of this crime.

¶54. The majority also relies on *Armstrong v. State,* 214 So. 2d 589 (Miss. 1968). It claims that Richardson should have been able to have the DNA tested because a defendant is to be permitted to inspect tangible evidence that might be used against him or which might be useful in his defense. The ruling in *Armstrong,* a murder case, says the trial court possibly should have allowed the defendant to see certain documents such as photographs and papers, but follows by stating that the denial of this discovery was not reversible error. *Armstrong v. State,* 214 So. 2d at 596. Armstrong confessed to the murder, as did Richardson, and would likely have been convicted regardless of the defense counsel's opportunity to review the requested documents. *Id*.

¶55. The majority is rightfully concerned with the sanctity of the judicial process and a criminal defendant's right to a fair trial. This is not to discount the importance of a complete and adequate defense, but is only to say that Richardson failed to show that there exists a reasonable probability both that expert assistance would be beneficial to the defense and that denial would result in a fundamentally unfair trial. See *Caldwell v. Mississippi*, 472 U.S. 320, 322, 105 S.Ct. 2633, 2637, 86 L.Ed. 2d 231 (1985).

¶56. The majority refers to *Ake v. Oklahoma*, 470 U.S. 68, 82-83, 105 S.Ct. 1087, 1096-1097, 84 L.Ed.2d 806, 812 (1983), as a guide to when a defendant is entitled to the aid of an expert. *Ake* held that before a defendant is entitled to an expert psychiatrist, the issue of sanity must be proven to be a substantial factor in the defense. *Id*. at 1093. The issues in *Ake* directly parallel those in *Polk v. State*, 612 So. 2d 381 (Miss. 1992), in that they deal with a determination of whether a defendant is entitled to an expert. As the majority correctly points out, *Polk* is not applicable to this decision because the issue is funding of testing as opposed to experts. If the majority wishes to distinguish one, it should not regress to relying on the

other. Neither are on point in the case sub judice. Regardless, the petitioner must offer more than undeveloped assertions that the requested assistance would be beneficial before a deprivation of due process can be found in the trial judge's decision. *See Coleman v. State*, 697 So. 2d at 780.

¶57. The majority further relies on *Polk* claiming that the State's consistent reference to the semen is equivalent to tendering an expert. This, it believes, gives Richardson the right to have an expert test the DNA, but no authority is cited for this contention. The questioned testimony was from the doctor who performed the rape kit test and from the investigator who was aware of the fact that the test was performed. The proper remedy for the defendant is cross-examination. Vigorous cross-examination can effectively neutralize the damaging effect of questionable evidence. *Street v. State*, 754 So.2d 497, 504 (Miss. Ct. App.1999).

¶58. While it is disputed as to the origin of the sample found in the victim, this Court has ruled that admission of disputed or potentially harmful evidence is harmless error where there is other substantial proof of the allegation. *Owens v. State*, 666 So.2d 814, 817 (Miss. 1995). In *Owens*, the jury had before it questionable, cumulative testimony regarding the apology of the defendant. Similar to the case sub judice, the fact that the State extracted potentially harmful evidence from witnesses is not reversible error.

¶59. Richardson's trial was not fundamentally unfair as a result of the denial of the DNA testing because there was no showing that the defense would be significantly aided by the results. The judgment of the trial court should again be affirmed. For the above reasons I respectfully dissent.

**MILLS AND COBB, JJ., JOIN THIS OPINION.**

1. It is unclear to what statement this request referred. The appellant's briefs suggest that initially the victim stated that there was no penetration but changed her version on the witness stand. Nothing in the record, however, supports that assertion. The victim's pre-trial statements are not completely reflected in the record. There is a reference to a statement that she thought that she might have been dreaming.