944 So.2d 56 (2005)
Vessie Lynn LEE, Appellant
v.
STATE of Mississippi, Appellee.
No. 2004-KA-00542-COA.
Court of Appeals of Mississippi.
November 22, 2005.
Rehearing Denied April 11, 2006.
*59 Matthew W. Kitchens, James W. Kitchens, attorneys for appellant.
Office of the Attorney General by Deirdre McCrory, attorney for appellee.
Before LEE, PJ, GRIFFIS and ISHEE, JJ.
GRIFFIS, J., for the Court.
¶ 1. Vessie Lynn Lee was convicted of two counts of statutory rape, four counts of sexual battery and three counts of gratification of lust. He was sentenced to life in prison for each count of statutory rape, thirty years for each count of sexual battery, and fifteen years for each count of gratification of lust. On appeal, Lee asserts the following errors: (1) the trial court erred in allowing the State to amend the indictment, (2) the trial court erred in denying his motion to suppress items seized from his residence, (3) the trial court erred in denying his motion for a medical and forensic examination of J.R.G., (4) the trial court erred regarding the testimony of Connie Evans, (5) the trial court erred regarding the testimony of Jeri Weaver, (6) he received ineffective assistance of counsel, (7) the verdict was against the overwhelming weight of the evidence, and (8) the cumulative effect of these errors denied him his fundamental right to a fair trial.

FACTS
¶ 2. On August 11, 2001, J.R.G., who was fourteen years old at the time of trial, accused Lee of sexually abusing her over an approximate nine month period. At the time the alleged offenses began, J.R.G. was only twelve years old. J.R.G. claimed that Lee forced her to perform oral sex on him and forced her to engage in sexual intercourse on two separate occasions. Based on J.R.G.'s allegations, Lee's home was searched, his personal items were seized, and his genitals were photographed. Subsequently, Lee was arrested.
*60 ¶ 3. Lee was indicted on ten counts of various sex crimes including, Counts I and II statutory rape, Counts III, IV, V, and VI sexual battery, and Counts VII, VIII, IX, and X gratification of lust. The State filed a motion to nolle prosequi Count VIII of the indictment, which was granted by the trial court, leaving only nine counts (Counts I-VII and IX-X). The jury convicted Lee on all counts. He was sentenced to serve life in prison for Counts I and II, with said sentences to run concurrently, thirty years for Counts III, IV, V, and VI, with said sentences to run concurrently with each other but consecutive to the sentences imposed in Counts I and II, and fifteen years for Counts VII, IX, and X, with said sentences to run concurrently with each other but consecutive to the sentences imposed in Counts I and II and Counts III, IV, V, and VI.
¶ 4. Lee filed a motion for judgment notwithstanding the verdict or, in the alternative, a new trial, which was denied by the trial court. Lee now appeals to this Court.

ANALYSIS
I. Did the trial court err in allowing the State to amend the indictment?
¶ 5. Counts III, IV, V and VI of the indictment state the following:
Count III
On or about the 3rd day of April, 2002, in the county aforesaid and within the jurisdiction of this court, Vessie L. Lee did willfully, unlawfully and feloniously engage in sexual penetration as defined in section 97-3-97, Fellation, Mississippi Code Annotated (1972), as amended, with [J.R.G.], a child whose age was thirteen (13) years of age, at the time, and her birth date being 10-29-1988, a child who is twenty-four (24) or more months younger then [sic] said Vessie L. Lee who was forty (40) years of age, without her consent, in Madison County, Mississippi, in violation of Mississippi Code Annotated, § 97-3-95(1)(d), (1972), as amended.
Count IV
On or about the 6th day of March, 2002, in the county aforesaid and within the jurisdiction of this court, Vessie L. Lee did willfully, unlawfully and feloniously engage in sexual penetration as defined in section 97-3-97, Fellation, Mississippi Code Annotated (1972), as amended, with [J.R.G.], a child whose age was thirteen (13) years of age, at the time, and her birth date being 10-29-1988, a child who is twenty-four (24) or more months younger then [sic] said Vessie L. Lee who was forty (40) years of age, without her consent, in Madison County, Mississippi, in violation of Mississippi Code Annotated, § 97-3-95(1)(d), (1972), as amended.
Count V
On or about the 28th day of October, 2001, in the county aforesaid and within the jurisdiction of this court, Vessie L. Lee did willfully, unlawfully and feloniously engage in sexual penetration as defined in section 97-3-97, Fellation, Mississippi Code Annotated (1972), as amended, with [J.R.G.], a child whose age was twelve (12) years of age, at the time, and her birth date being 10-29-1988, a child who is twenty-four (24) or more months younger then [sic] said Vessie L. Lee who was thirty-nine (39) years of age, without her consent, in Madison County, Mississippi, in violation of Mississippi Code Annotated, § 97-3-95(1)(d), (1972), as amended.

*61 Count VI
On or about the 30th day of August, 2001, in the county aforesaid and within the jurisdiction of this court, Vessie L. Lee did willfully, unlawfully and feloniously engage in sexual penetration as defined in section 97-3-97, Fellation, Mississippi Code Annotated (1972), as amended, with [J.R.G.], a child whose age was twelve (12) years of age, at the time, and her birth date being 10-29-1988, a child who is twenty-four (24) or more months younger then [sic] said Vessie L. Lee who was thirty-nine (39) years of age, without her consent, in Madison County, Mississippi, in violation of Mississippi Code Annotated, § 97-3-95(1)(d), (1972), as amended.
(emphasis added).
¶ 6. Mississippi Code Annotated Section 97-3-95(1)(a) (Rev.2000) states that "[a] person is guilty of sexual battery if he or she engages in sexual penetration with another person without his or her consent." (emphasis added). Section 97-3-95(1)(d), under which Lee was indicted, states that "[a] person is guilty of sexual battery if he or she engages in sexual penetration with a child under the age of fourteen (14) years of age, if the person is twenty-four (24) or more months older than the child." Lee contends that the language of Section 97-3-95(1)(a), "without her consent," which was included in the indictment, created confusion for the defense by not providing notice as to what portions of the statute under which he was charged. Lee argues that the indictment was confusing since it was unclear under which subsection to defend, 97-3-95(1)(a) or 97-3-95(1)(d). As a result, Lee filed a motion to quash the indictment as to Counts III, IV, V and VI. The trial court denied the motion and granted the State's motion to amend. Lee now argues that the trial court erred in allowing the State to amend the indictment since the amendment materially altered a defense that the defendant had under the original indictment. See Griffin v. State, 584 So.2d 1274, 1275 (Miss.1991).
¶ 7. Lack of consent is not an element of this variety of sexual battery. A child under the age of fourteen has no legal ability to consent to such an act. In this context, the language "without her consent" had no legal meaning. Its removal did not deprive Lee of a valid defense. It follows that the trial court had the power to amend the indictment to remove the language "without her consent," which was not an element of the offense charged and which purported to give the defendant a basis for a nonexistent defense. Furthermore, in each count of the indictment, the exact code section and subsection was noted. Thus, the indictment clearly notified Lee that he was charged with sexual battery as defined in Mississippi Code Annotated Section 97-3-95(1)(d) (Rev.2000). Upon review, we find that Lee was not prejudiced by the amendment. Therefore, the trial court did not err in allowing the State to amend the indictment.
II. Did the trial court err in denying Lee's motion to suppress items seized from his residence?
¶ 8. Prior to trial, the defense filed a motion to suppress evidence seized pursuant to the execution of a search warrant on the ground that the affidavit for the warrant and the warrant itself were "legally defective and insufficient" in that they described "the inspection sought by the warrant in such vague terms" that a reasonable person could not "determine what information law enforcement officials were seeking." It is important to note that neither the search warrant nor the underlying facts and circumstances used to obtain it were included in the record. Thus, *62 Lee's challenge is not properly before this Court. See McKinney v. State, 724 So.2d 928, 932(¶ 14) (Miss.Ct.App.1998) (citing Branch v. State, 347 So.2d 957, 958-59 (Miss.1977)).
¶ 9. Nonetheless, the trial transcript indicates that the search warrant was specific, despite Lee's allegation to the contrary. According to the trial transcript, the search warrant describes what the police are looking for as "vibrators, described as being hot pink in color and having a knob on one end to turn it on and off." Additionally, the search warrant states "one pair of men's thong underwear with black and white zebra print." Both the pink vibrator and the black and white thong were found in Lee's home.
¶ 10. Lee contends that the vibrator and thong should have been excluded as irrelevant. Tools, weapons, and other physical evidence used or usable in the commission of a crime are admissible into evidence, provided they are relevant and not too remote. Bryant v. State, 850 So.2d 1130, 1134(¶ 12) (Miss.Ct.App.2002). The vibrator and the thong were utilized in the defendant's enticement of the victim, were part of the complete story of these crimes, and corroborated the victim's testimony. A trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence. Fisher v. State, 690 So.2d 268, 274 (Miss.1996). We do not find that the trial court abused its discretion in refusing to exclude the items from evidence.
¶ 11. Lee also claims that the search warrant is invalid since it was based solely on the uncorroborated information provided by J.R.G. In support of his argument, Lee relies on State v. Woods, 866 So.2d 422, 426(¶ 14) (Miss.2003), which held that an informant unknown to law enforcement giving uncorroborated evidence creates a constitutional problem with a search warrant. However, Lee's reliance on Woods is misplaced. Woods dealt with a confidential informant who had never provided any evidence to law enforcement authorities and was never questioned about his reliability. Id. Here, law enforcement officers had experience with J.R.G.J.R.G. was not an unknown confidential informant but instead was a victim reporting an offense committed against her. As the court stated in Walker v. State, 473 So.2d 435, 438-39 (Miss.1985):
when information is furnished by an eyewitness rather than from an informant, there is no need to show the party supplying the information was a credible person. The rationale for the victim or eyewitness exception is that the statements of such eyewitnesses are based on their own observation and thus are not likely to reflect mere "idle rumor or irresponsible conjecture."
For this reason, the trial court properly rejected the defendant's reliance on Woods.
¶ 12. Lee further argues that a photograph taken of Lee's genital area should have been excluded based on its prejudicial effect. "The admissibility of photographs rests within the sound discretion of the trial judge. Such discretion of the trial judge runs toward almost unlimited admissibility regardless of the gruesomeness, repetitiveness, and extenuation of probative value." Martin v. State, 854 So.2d 1004, 1007-08(¶ 7) (Miss.2003). The trial judge overruled Lee's motion in limine to exclude the photograph, noting that the defense's cross-examination of the victim had put her credibility into issue and that the photograph went to the victim's credibility as well as to the crime itself. The photograph corroborated J.R.G.'s testimony and showed that Lee had a scar on his abdomen and that he shaved his genital area. Upon review, we find that the probative value of the photograph *63 was not substantially outweighed by the danger of unfair prejudice. Thus, we find no error.
¶ 13. We find that the trial court did not err in denying Lee's motion to suppress items seized in his home. Therefore, this issue is without merit.
III. Did the trial court err in denying Lee's motion for a medical and forensic examination of J.R.G.?
¶ 14. Lee filed a motion requesting that the trial court order J.R.G. to be physically examined by an independent physician to determine whether she had previously had sexual intercourse. Lee also requested that J.R.G.'s DNA be analyzed in order to determine whether the pink vibrator had her DNA on it. The trial court denied both requests.
¶ 15. Lee did not present the trial court with any authority for the proposition that a victim in a criminal case may be compelled to submit to a medical examination. The cases cited in Lee's brief to this Court address the propriety of allowing a defendant access to medical records already in existence or allowing the defense to test medical evidence already in existence. For instance, Lee cites Richardson v. State, 767 So.2d 195 (Miss.2000). In Richardson, the defendant contested that there was penetration and therefore wanted to test seminal fluid evidence. Id. at 198(¶ 14). Without the evidence, the case rested almost entirely on the testimony of the twelve-year-old victim. Id. The court found that the State relied upon the evidence that semen was present to support the inference that the defendant did in fact sexually penetrate the victim. Id. at 199(¶ 14). The court held that the DNA evidence was relevant and material, because it could significantly aid the defense by showing that the semen sample found was not the defendant's, thus eliminating the semen as objective evidence of penetration. Id. at 199(¶ 15). Here, the prosecution relied upon the presence of the pink vibrator to support the inference that because J.R.G. knew of its existence, Lee must have sexually abused her. Lee argues that, as in Richardson, the defense should have been allowed to test the vibrator for J.R.G.'s DNA. However, the DNA in Richardson was found by the state crime lab on one of the slides of material taken from the victim's vagina as part of the rape kit. Id. at 197(¶ 8). Here, no such DNA evidence existed.
¶ 16. Lee failed to present any evidence to support his position and failed to specifically show how this proposed examination would aid his defense. The authority Lee relies on addresses medical records and medical evidence already in existence. This is a fundamentally different issue from that of forcing a victim to submit to an examination. Thus, the trial court did not err in denying the motion for a medical and forensic examination of J.R.G.
IV. Did the trial court err regarding the testimony of Connie Evans?
¶ 17. While cross-examining Connie Evans, who lived across the street from Lee, defense counsel asked whether she had told Beth Lee, the defendant's wife, that she did not trust men because Evans' daughter had been molested by her ex-husband. Evans testified that she had not made such a statement to Beth and stated that she would never discuss anything like this with anyone except with her family. Later, while examining Beth Lee, the defense sought to elicit testimony that Evans had made a statement to Beth about Evans' feelings toward men in general. The State objected and the trial court ruled that this was inadmissible hearsay. Lee now asserts that this ruling constitutes reversible error.
*64 ¶ 18. Evans' testimony was not essential to the State's case. She was not the complaining witness nor did she observe any criminal behavior on Lee's part. Evans testified only that she saw Lee walk J.R.G. from the bus stop to his garage on several occasions. This was straightforward testimony. We fail to see how Evans' attitude towards or preconceived notions about men would impact the credibility of this testimony. Whether Evans had given this information to Beth would have added little if anything to Lee's position. Thus, the excluded testimony would be harmless, at best.
¶ 19. Because Evans' testimony was not crucial, the refusal to allow insubstantial impeachment of this witness is not reversible error. None of the information the statement may have provided contradicted Evans' testimony in any significant manner such that the interests of justice would demand this Court's finding an abuse of discretion. See Peyton v. State, 858 So.2d 156, 160(¶ 21) (Miss.Ct.App.2003). Moreover, it is inconceivable that a different result would have been reached had the testimony been allowed.
¶ 20. Lee next argues that the trial court erred by allowing Evans to give improper opinion testimony. Evans testified that she did not think J.R.G. would have made up the allegations against Lee. Defense counsel objected on the grounds that the witness was speculating. Evans' response came as a result of redirect questioning about her conversation with Beth Lee, which had been brought out by the defense.
Q. (By Mr. Wilkerson) You can't testify to what she said. You can only testify as to what you told her. What, if anything, did you say to her?
A. I just said, "You need to look at the situation and evaluate what might have happened," when I talked to her.
Q. What situation were you referring to?
A. The allegations against Mr. Lee and that [J.R.G.]you know, I don't think that she would have made it up.
The trial court overruled the objection, finding that the witness was explaining her conversation and testifying as to what she said. The court found that the defense had "brought it out." After the witness left the stand, outside the presence of the jury, defense counsel moved for a mistrial on the ground that Evans' statement constituted improper opinion testimony. The State argued that it had not elicited any opinions from the witness, and the court agreed.
¶ 21. An objection must be specific and contemporaneous to preserve an alleged error for review. Waldon v. State, 749 So.2d 262, 268(¶ 18) (Miss.Ct. App.1999). Moreover, "an objection on one or more specific grounds constitutes a waiver of all other grounds." Byrom v. State, 863 So.2d 836, 878 (¶ 152) (Miss. 2003). The contemporaneous objection lodged below was grounded solely on speculation and thus constituted a waiver of the objection on the ground of improper opinion testimony. The motion for mistrial on this ground was made after the witness left the stand and was thus untimely.
¶ 22. The jury observed J.R.G.'s demeanor and listened to her testimony. The trial judge found that J.R.G. was "probably the most credible witness" he had ever heard. It is therefore unlikely that Evans' opinion had any effect on the outcome of this case. Assuming arguendo that Evans' statement was improper opinion testimony, such testimony was harmless. See Whittington v. State, 523 So.2d 966, 975 (Miss.1988).
¶ 23. Upon review, we find that the trial court did not err regarding the testimony *65 of Connie Evans. Therefore, this issue is without merit.
V. Did the trial court err regarding the testimony of Jeri Weaver?
¶ 24. During the testimony of Jeri Weaver, the defense sought to elicit information regarding who Weaver saw at the end of Lee's driveway on the day Lee was arrested and what they were doing. Weaver is the mother-in-law of appellant Vessie Lee. The State objected on relevancy grounds and an off-the-record bench conference was held. The objection was sustained. Following the testimony of Beth Lee, the defense proffered, outside the presence of the jury, that Weaver would have testified that when she went to Lee's home immediately after Lee was arrested, she saw J.R.G. and two other children at the end of the driveway laughing. The purpose of the testimony was to show that if J.R.G. was indeed afraid of Lee, as she testified, and if she took the alleged sexual abuse and his resulting arrest as seriously as she claimed, she would not have been at the end of the driveway laughing right after Lee was arrested. The trial judge found the testimony irrelevant and not probative on any of the issues. Lee contends the trial court's ruling prevented him from impeaching J.R.G. However, in its context, the proffered evidence has no bearing on J.R.G.'s credibility. The alleged laughing occurred after Lee had been removed from the scene, when J.R.G. would have had no reason to be afraid of him. Weaver also would not have been able to testify specifically why J.R.G. and the other children were laughing.
¶ 25. The trial court has broad discretion in determining the relevance of evidence. Bryant, 850 So.2d at 1134(¶ 14). Upon review, we find that the trial court did not err regarding the testimony of Jeri Weaver. Thus, this issue lacks merit.
VI. Did Lee receive ineffective assistance of counsel?
¶ 26. Lee contends he received ineffective assistance of counsel. The standard applied to claims of ineffective assistance of counsel were first articulated by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove ineffective assistance of counsel, Lee must demonstrate that his counsel's performance was deficient and that this deficiency prejudiced his defense. Id. at 687, 104 S.Ct. 2052. The burden of proof rests with Lee. McQuarter v. State, 574 So.2d 685, 687 (Miss.1990). Under Strickland, there is a strong presumption that counsel's performance falls within the range of reasonable professional assistance. Strickland, 466 U.S. at 694, 104 S.Ct. 2052. To overcome this presumption, "the defendant must show that there is a reasonable probability that, but for the counsel's unprofessional errors, the result would have been different." Id.
¶ 27. "With respect to the overall performance of the attorney, counsel's choice of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections falls within the ambit of trial strategy and cannot give rise to an ineffective assistance of counsel claim." Howard v. State, 853 So.2d 781, 789 (Miss.2003). "Having a trial strategy negates an ineffective assistance of counsel claim, regardless of counsel's insufficiencies." Hall v. State, 735 So.2d 1124, 1127(¶ 10) (Miss.Ct.App.1999).
¶ 28. In his brief to this Court, Lee lists nine deficiencies in his trial counsel's performance. However, Lee has not overcome the presumption that but for his trial counsel's unprofessional errors the result *66 would have been different. See Strickland, 466 U.S. at 694, 104 S.Ct. 2052. For instance, Lee contends that his counsel was deficient in failing to introduce Dr. Thomas L. Wiley's report. However, this decision could easily be seen a matter of strategy. The medical report indicated that Dr. Wiley "strongly suspect[s] that [J.R.G.] has had sexual contact in the past. However, on examination, this could not be determined 100%." Lee's trial counsel could have decided that the report might do more harm than good to Lee's case, so he did not introduce it. Also, Lee argues that his trial counsel was deficient in withdrawing jury instruction D-37. Again, this decision was purely strategic. Lee's trial counsel withdrew the instruction after concluding that it might "cut the other way."
¶ 29. The record shows that Lee's trial counsel filed numerous pretrial motions and jury instructions, called approximately twenty-two witnesses and zealously cross-examined J.R.G. Thus, Lee has failed to show that he received ineffective assistance of counsel. See Lott v. State, 844 So.2d 502, 505(¶ 8) (Miss.Ct.App.2003). Therefore, this issue is without merit.
VII. Was the verdict against the overwhelming weight of the evidence?
¶ 30. In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the trial court has abused its discretion in failing to grant a new trial. Montana v. State, 822 So.2d 954, 967(¶ 61) (Miss.2002). Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal. Id. at 967-68. "[W]e do not reverse criminal cases where there is a straight issue of fact, or a conflict in the facts; juries are impaneled for the very purpose of passing upon such questions of disputed fact, and we do not intend to invade the province and prerogative of the jury." Thomas v. State, 812 So.2d 1010, 1014(¶ 19) (Miss.Ct.App.2001) (quoting Evans v. State, 159 Miss. 561, 566, 132 So. 563 (Miss.1931)). The unsupported word of the victim of a sex crime is sufficient to support a guilty verdict where that testimony is not discredited or contradicted by other credible evidence. McKinney v. State, 521 So.2d 898, 899 (Miss.1988). "It is well settled in this State that a conviction of rape may be upheld with the uncorroborated testimony of the victim." Id.
¶ 31. In this case, the victim's testimony was corroborated by her knowledge of the pink vibrator, the thong underwear, and the appearance of Lee's genital area. Lee's attempt to explain this knowledge simply created an issue of fact for the jury to resolve. The fact that the jury believed J.R.G. gives Lee no basis for a valid complaint on appeal. Thus, upon review, we find this issue lacks merit.
VIII. Did the cumulative effect of these errors deny Lee his fundamental right to a fair trial?
¶ 32. Lee lasts contends that his conviction should be reversed on the ground of cumulative error. We disagree. "Where there is no reversible error in any part, there is no reversible error to the whole." Brown v. State, 854 So.2d 1081, 1086(¶ 18) (Miss.Ct.App.2003) (citing McFee v. State, 511 So.2d 130, 136 (Miss. 1987)).
¶ 33. THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY OF CONVICTION OF COUNTS I AND II STATUTORY RAPE, COUNTS III, IV, V, AND VI SEXUAL BATTERY, AND VII, IX, AND X GRATIFICATION *67 OF LUST AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS FOR COUNTS I AND II, WITH SAID SENTENCES TO RUN CONCURRENTLY, THIRTY YEARS EACH FOR COUNTS III, IV, V, AND VI WITH SAID SENTENCES TO RUN CONCURRENTLY WITH EACH OTHER BUT CONSECUTIVELY TO THE SENTENCES IMPOSED IN COUNTS I AND II, AND FIFTEEN YEARS EACH FOR COUNTS VII, IX, AND X, WITH SAID SENTENCES TO RUN CONCURRENTLY WITH EACH OTHER BUT CONSECUTIVELY TO THE SENTENCES IMPOSED IN COUNTS I AND II AND COUNTS III, IV, V, AND VI, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MADISON COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., BRIDGES, CHANDLER, BARNES AND ISHEE, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.