794 So.2d 253 (2001)
Matt WASHINGTON a/k/a Matt D. Washington a/k/a Matt Derells Washington, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2000-KA-00204-COA.
Court of Appeals of Mississippi.
February 20, 2001.
Rehearing Denied May 8, 2001.
Certiorari Denied August 30, 2001.
*255 Robert M. Ryan, Andre' De Gruy, Jackson, for Appellant.
Office of the Attorney General by W. Glenn Watts, for Appellee.
*256 Before SOUTHWICK, P.J., THOMAS, and LEE, JJ.
LEE, J., for the Court:
¶ 1. This appeal is from the Circuit Court of Hinds County where a jury found the defendant, Matt Washington, guilty of robbery of the contents of the purse of his former live-in girlfriend, Lorraine Johnson, pursuant to Miss.Code Ann. § 97-3-73 (Rev.2000). He was sentenced as an habitual criminal, as defined by Miss.Code Ann. § 99-19-81 (Rev.2000), to serve a term of fifteen years in the custody of the Mississippi Department of Corrections. He has appealed to this Court from that conviction and sentence.

FACTS
¶ 2. Lorraine Johnson testified that she and Matt Washington had lived together for four to five years when she called off the relationship in August 1998 because of his continual infidelity. On the day of the incident which precipitated this appeal, September 22, 1998, Johnson said that Washington called her at work and asked if she was going to choir rehearsal at church that night. She answered that it was not his business. She said that when she returned to her apartment after rehearsal that night about 8:30 p.m. she looked around the apartment complex because she felt uncomfortable since she had received a call from Washington earlier in the day. She testified that when she got out of her car she had her keys in her hand, and she went to unlock the door to her apartment. Washington ran up from behind, pushed her against the wall, grabbed her purse and ran as she screamed. Her purse contained her cell phone which cost $150, a camera, approximately $40 in cash, her credit cards and checkbook.
¶ 3. Greg, a neighbor, heard Johnson scream and came to her rescue. Johnson went with Greg into his apartment and called the police. Officer Gibson responded to the call and went to Johnson's apartment with her. While Gibson and Johnson were in the apartment, Washington called Johnson several times using her cell phone. Officer Gibson spoke to Washington during one of these calls, and Washington left several messages at other times. The records from BellSouth Mobility entered into evidence indicate that approximately forty-five calls were made from Johnson's cell phone to Johnson's apartment on the evening of the incident between 8:50 p.m. and shortly after midnight. Johnson testified that approximately one month after the incident Washington dropped the purse off in the parking lot of her apartment complex, and she recovered it. Though the purse still contained her checkbook and credit cards, which were no longer of use to her because she had closed the relative accounts, her cell phone, cash, and camera were not returned.

ISSUES AND DISCUSSION

I. SHOULD THE TRIAL COURT HAVE GRANTED A DIRECTED VERDICT IN FAVOR OF THE DEFENSE BECAUSE THE PROSECUTION FAILED TO PRESENT EVIDENCE THAT VIOLENCE CAUSED THE VICTIM TO SURRENDER HER PURSE?
¶ 4. Washington was found guilty of robbery pursuant to Miss.Code Ann. § 97-3-73 (Rev.2000). That section states:
Every person who shall feloniously take the personal property of another, in his presence or from his person and against his will, by violence to his person or by putting such person in fear of some immediate injury to his person, shall be guilty of robbery.
The thrust of the argument Washington submits in this issue is that the State's *257 evidence was insufficient to support a conviction for robbery and that his motion for a directed verdict should have been granted. He asserts that the evidence was not sufficient to support the requisite element of the use of force or violence.
¶ 5. In assessing the legal sufficiency of the evidence on a motion for a directed verdict or a motion for JNOV, the trial judge is required to accept as true all of the evidence that is favorable to the State, including all reasonable inferences that may be drawn therefrom, and to disregard evidence favorable to the defendant. Yates v. State, 685 So.2d 715, 718 (Miss. 1996); Ellis v. State, 667 So.2d 599, 612 (Miss.1995); Noe v. State, 616 So.2d 298, 302 (Miss.1993); Clemons v. State, 460 So.2d 835, 839 (Miss.1984). If under this standard sufficient evidence to support the jury's verdict of guilty exists, the motion should be overruled. Brown v. State, 556 So.2d 338, 340 (Miss.1990); Butler v. State, 544 So.2d 816, 819 (Miss.1989).
¶ 6. Adhering to the standard of review to which we are bound, in accordance with Miss.Code Ann. § 97-3-73 (Rev.2000), we will first look at the evidence that is favorable to the State's case, including all reasonable inferences, showing that Washington used force or violence or put Johnson in fear of immediate injury in order to take her purse. Johnson testified that Washington ran up to her from behind as she attempted to unlock the door to her apartment. He then pushed her against the wall and grabbed her purse as she turned around and screamed. She said she did not know if he was going to kill her as she stood pushed against the wall when he grabbed her purse. She specifically stated that she did not give the purse to him but that he took it. We find that this evidence alone is sufficient to support the requisite element of robbery, that Johnson surrendered her purse as a result of being genuinely afraid of being harmed or killed by Washington during this incident, thereby supporting the trial court's denial of the defense's motion for a directed verdict.
¶ 7. We also distinguish Jones v. State, 567 So.2d 1189, 1192 (Miss.1990), upon which the appellant relies. In that case, the court found that there was insufficient evidence to establish that fear caused the clerk in the convenience store to be robbed because the State put on no proof to show that the defendant put the clerk in fear in order to take the cigarettes. Though in Jones there was evidence in the record to show that fear existed, the State did not establish that the fear caused the clerk to be robbed. While we recognize that fear after a robbery will not suffice to support that it was the cause of the robbery, Clayton v. State, 759 So.2d 1169, 1172(¶ 8) (Miss.1999), we do not find that to be the case in the case sub judice, as the appellant asserts. Though there was testimony from the officer who responded to the call after the incident that Johnson was afraid after she was robbed, the record clearly shows that the State properly established, through Johnson's testimony, that she was in fear when she was robbed. Accepting as true all of the evidence that is favorable to the State, including all reasonable inferences that may be drawn therefrom, Yates v. State, 685 So.2d at 718, we find that this testimony supports the reasonable inference that Johnson was robbed because she was in fear and that the requisite element for robbery was established.

II. DID THE TRIAL COURT FAIL TO PROPERLY INSTRUCT THE JURY THAT IT WAS REQUIRED TO FIND BEYOND A REASONABLE DOUBT THAT THE DEFENDANT INTENDED TO PERMANENTLY DEPRIVE JOHNSON OF HER PERSONAL PROPERTY?
¶ 8. Washington claims that the failure of the trial court to instruct the *258 jury that the taking of the property must have been with the intent to permanently deprive the owner of the property was reversible error. He asserts that a mere finding that the defendant wilfully took and carried away the property of the victim is insufficient to sustain a conviction for robbery. Johnson v. State, 744 So.2d 833, 837-38 (¶ 17) (Miss.Ct.App.1999). We agree; however, an examination of instruction S-1 given to the jury shows that though it did not incorporate the words "with intent to permanently deprive," as did instruction D-2, S-1 did state that the jury was required to find that Washington had feloniously taken the property of Johnson. The language of S-1 actually tracts that in Miss.Code Ann. § 97-3-73 (Rev.2000), the statute under which Washington was indicted. Jury instruction S-1 stated:
The Court instructs the jury that if you believe from the evidence in this case, beyond a reasonable doubt, that the defendant, Matt Washington, on or about the 22nd day of September, 1998, in the First Judicial District of Hinds County, Mississippi,
(1) did, with intent to steal, then and there wilfully, unlawfully, and feloniously take the property of Lorraine Johnson,
(2) in the presence of, from the person of, and against the will of Lorraine Johnson,
(3) by putting the said Lorraine Johnson in fear of immediate injury to her person or by violence to her person,
(4) said property being a purse and its contents, including good and lawful money of the United States of America, a cellular telephone, keys and/or any property, then you should find the defendant guilty of robbery as charged.
Instruction D-2 was in essence identical to instruction S-1 as stated above with the exception that the words "intent to permanently deprive" were substituted for "with intent to steal."
¶ 9. It is well-established in the law that a charge of "felonious taking" carries with it an implied assertion of the requisite intent to permanently deprive the rightful owner of the taken property. Johnson v. State, 744 So.2d at 837 (¶ 13); State v. Snowden, 164 Miss. 613, 619, 145 So. 622, 622-623 (1933); Black's Law Dictionary 617 (6th ed.1990). The jury was properly instructed regarding an intent to permanently deprive the victim of her property, and we find no merit to this argument.

III. DID THE TRIAL COURT ERR IN FAILING TO GRANT AN INSTRUCTION FOR LESSER OFFENSES OF LARCENY AND ASSAULT?
¶ 10. Washington argues that the trial court did not properly instruct the jury regarding the lesser-included-offense of larceny and the lesser offense of assault because it denied jury instructions D-3 and D-4, which instructed the jury regarding those crimes.
¶ 11. Johnson was unwavering in her testimony that she did not give her purse to Washington freely and that she surrendered it as a result of the genuine fear of being harmed or killed by Washington. Though she testified that the purse itself was later returned, none of the items of value inside the purse were ever returned. Since Washington did not testify on his own behalf and the defense presented no witnesses, there was no evidence presented regarding the taking of Johnson's purse and the use of force other than Johnson's own testimony, which was corroborated to the extent reasonably possible by the testimony of Officer Gibson. Because there is no alternative account to consider, there is no evidentiary basis for *259 an instruction, as Washington asserts, that the purse was taken other than by the use of force or that Washington was guilty of assault. In order to be entitled to a lesser-included-offense instruction there must be some evidence in the record from which a jury could, other than by mere surmise, find a defendant not guilty of the crime charged and at the same time find him guilty of a lesser-included-offense. Toliver v. State, 600 So.2d 186, 192 (Miss.1992). Instructions regarding lesser offenses likewise require an evidentiary basis. Such instructions should be granted only where there is an evidentiary basis in the record. Mangum v. State, 762 So.2d 337, 343 (¶ 18) (Miss.2000). Because there is no evidentiary basis in the record for assault or larceny, those relevant instructions were properly denied by the trial court.

IV. DID THE TRIAL COURT ERR IN DENYING THE DEFENSE A MISTRIAL FOR IMPROPER INTRODUCTION OF EVIDENCE OF OTHER WRONGS?
¶ 12. Washington argues that the trial court erred in failing to grant him a mistrial because the State introduced evidence of other crimes which prejudiced him to the jury. The record shows that the defense's motion for a mistrial was based on a response given by Officer Gibson, a State witness, on redirect-examination. However, in order to understand the flow of the questioning, we will begin with Gibson's testimony on cross-examination in response to questioning by defense counsel. That colloquy follows:
Q. Have you ever personally spoken with Matt Washington?
A. Yes. After this incident I met him several times.
Q. You met with Matt several times after this incident?
A. Yes.
Q. And in what context did you meet with him?
A. The area that I patrolled. He frequented that area that I patrolled.
Immediately following this colloquy on cross-examination, Gibson was questioned on redirect-examination regarding Gibson's recognition of Washington's voice, since Gibson testified that he had spoken with Washington on the telephone when he called to Johnson's apartment following the incident. The colloquy on redirect-examination follows:
Q. And the times that you spoke with this defendant, visited with him or ran into him while you were on patrol was there any kind of conversation going on? Did you hear him speak?
A. Yes....
Q. And having actually spoken with this defendant ... would you tell us whether or not that in any waydid it confirm or contradict the identity of the person that had stolen Mrs. Johnson's purse?
A. Well, one incident where I pulled him over one night
Q. Excuse me. Did it confirm or contradict what you were told by Mrs. Johnson?
A. It was confirmed.
The defense stated in its motion for a mistrial, "Your Honor, our first motion is a motion for a mistrial based on the officer's response that he pulled Matt over, going into other crimes and evidence." Defense counsel went on to say that the statement was prejudicial to Washington.
¶ 13. The record shows that Officer Gibson did not testify on redirect-examination regarding any other wrongs committed by Washington, as the above colloquy shows. In fact, the record shows that Gibson merely stated that he had *260 heard Washington speak and had pulled him over on one occasion. Gibson did not mention for what reason he pulled him over. Based on the record evidence there was no explicit mentioning of other wrongs when Officer Gibson said that he pulled Washington over. Furthermore, a predicate had been established indicating the context in which Gibson had spoken with Washington. That was not in regard to other crimes but in regard to Gibson's being familiar with Washington because he either worked or lived in the area patrolled by Gibson. The record does not show that there is a basis for an objection to the statement as evidence of other crimes or wrongs under M.R.E. 404(b) since Gibson's statement did not mention evidence of other crimes. In addition, the defense specifically requested that the court not instruct the jury to ignore any reference to any wrongs inferred by Gibson's statement when the trial court overruled its motion for a mistrial because that would have highlighted the statement. When M.R.E. 404(b) evidence is offered and an objection to that evidence is overruled, that objection invokes the right to an M.R.E. 403 balancing analysis and a limiting instruction. Smith v. State, 656 So.2d 95, 100 (Miss.1995). Because the defense objected to the limiting instruction in this case, an analysis grounded on M.R.E. 403 would not have been invoked even if Gibson's statement had mentioned other crimes or wrongs.
¶ 14. Any other basis for Washington's objection to Gibson's statement was waived since an objection on one or more specific grounds constitutes a waiver of all other grounds. Stringer v. State, 279 So.2d 156, 158 (Miss.1973). In addition, the record shows that the only evidence of other wrongs was introduced during cross-examination of Johnson by the defense where she stated that she had previously taken Washington to court for stalking charges. Because there was no contemporaneous objection made in regard to this statement, the issue has been waived. Dunaway v. State, 551 So.2d 162, 164 (Miss.1989). The record further shows that there was no request by the defense for the trial court to instruct or admonish the jury to disregard any references to any other crimes or wrongs inferred by this or any other statement.
¶ 15. During direct examination Johnson stated that Washington had made rude and threatening telephone calls to her. The defense objected to that statement on the basis of relevancy but appeals the statement as evidence of other wrongs or acts. An objection on one or more specific grounds constitutes a waiver of all other grounds. Conner, 632 So.2d at 1255. Again, there was no request by the defense for the trial court to instruct or admonish the jury to disregard any references to other wrongs to which that statement may have inferred.
¶ 16. We do not find the trial court erred in overruling the defense's motion for a mistrial. The trial judge is in the best position for determining the prejudicial effect of an objectionable comment. Alexander v. State, 602 So.2d 1180, 1182 (Miss.1992). The judge is thus vested with discretion to determine whether the comment is so prejudicial that a mistrial should be declared. Edmond v. State, 312 So.2d 702, 705 (Miss.1975). His decision will not be overturned on appeal unless it was an abuse of discretion. Davis, 684 So.2d at 661; Johnston, 567 So.2d at 238. The appellant must show that he was effectively denied a substantial right by the ruling before a reversal can be possible. Peterson v. State, 671 So.2d 647, 656 (Miss. 1996); Newsom v. State, 629 So.2d 611 at 614 (1993). If a constitutional right has been violated, the case must be reversed *261 unless the Court finds that the "error was harmless beyond a reasonable doubt" upon consideration of the entire record. Newsom, 629 So.2d at 614.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF ROBBERY AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS AN HABITUAL OFFENDER IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO HINDS COUNTY.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., PAYNE, BRIDGES, THOMAS, MYERS and CHANDLER, JJ., concur.
IRVING, J., concurs in result only.