CHANDLER, J.,
for the Court.
¶ 1. Esau Grubbs was found guilty of aggravated assault with a weapon under Mississippi Code Annotated section 97-3-7 (Rev.2000) in the Circuit Court of Hinds County and was sentenced to twenty years in the custody of the Mississippi Department of Corrections. Grubbs now appeals and asserts the following issues:
I. WHETHER THE TRIAL COURT ERRED IN INSTRUCTING THE JURY
II. WHETHER THE TRIAL COURT ERRED IN DENYING THE MOTION FOR DISCOVERY
*935 III. WHETHER THE TRIAL COURT ERRED IN DENYING THE ASSISTANCE OF A DNA EXPERT
¶ 2. Finding no error, we affirm.
FACTS
¶3. Esau Grubbs lived at Lighthouse Mission Ministries (Lighthouse) on 1075 Maderia Street in Jackson. Grubbs was working as a temporary worker through a service run through Lighthouse called Reliable Temps. On March 29, 2003, shortly before 10:00 p.m., Grubbs walked to a nearby convenience store where he consumed four cans of beer. The Lighthouse prohibits the use of drugs and alcohol and does not allow the possession of firearms or knives. Shortly after 10:00 p.m., police were called to Lighthouse for an aggravated assault involving Grubbs and Savoy Ja-mison, a fellow resident. Grubbs and Ja-mison have significantly different versions of the event.
¶4. According to Grubbs, Jamison and Derrick Peterson, another Lighthouse resident, wanted him ejected from Lighthouse. Grubbs went to the convenience store because he was angered by a confrontation he had with Peterson earlier that day. Grubbs alleges Jamison and Peterson entered his room when he returned from the convenience store but left when Grubbs told them to “take their business elsewhere.” Jamison and Peterson returned to Grubbs’ room approximately fifteen minutes later, a physical struggle ensued, and Grubbs was pushed to the ground cutting open his hand. Grubbs swung at Jamison with a pocketknife, believing the pocketknife was closed. Grubbs claims he did not know if Jamison had a knife and he did not know Jamison was injured until he saw him later at the hospital. After the struggle, Grubbs went to his suitcase to find something to wrap his hand. After he bandaged his hand, Grubbs realized the police had arrived and descended downstairs to meet the police.
¶ 5. According to Jamison, he was patrolling the Lighthouse as security that night when Grubbs arrived intoxicated. Jamison confronted Grubbs and told him to go to his room and sleep it off. Later that evening, Peterson called Jamison and instructed him to escort Grubbs to the office to take a blood/alcohol test. When Jamison asked Grubbs to accompany him to the office to be tested, Grubbs refused. Jamison said Grubbs “broke out and ran.” Because Jamison had a broken ankle and was wearing a cast, his movement was hindered and he fell. Grubbs fell on top of Jamison and began to stab him repeatedly. Grubbs was pulled off Jamison at which time Grubbs threw the knife over the balcony, went into his room and returned with a second knife. Grubbs entered the apartment where Jamison and Peterson lived and broke the window, cutting his fingers. Jamison never had a knife.
¶ 6. Police Officer Lance Scott arrived at Lighthouse where he saw Grubbs walking down the stairs. Officer Scott did not see anyone else upon arrival. Scott read Grubbs his Miranda rights, handcuffed him and placed him in the patrol car. Scott noticed Grubbs suffered from a laceration on his thumb and called an ambulance. Grubbs was taken into custody and treated for his injured hand. On June 10, 2003, Grubbs was indicted for aggravated assault with a weapon under Mississippi Code Annotated section 97-3-7 (Rev.2000).
¶ 7. Grubbs stood trial on July 19, 2004. At trial, Jamison, Grubbs and Officer Scott testified as to their recollection of the events. Also, William Johnson, a Lighthouse resident, testified. Johnson stated that he saw Grubbs attack Jamison with a knife. After the stabbing, Johnson stated that someone pulled Jamison inside an apartment and locked the door. Johnson *936 testified that Jamison did not have a knife and that Grubbs broke the window in Ja-mison’s apartment. Officer Michael Chil-dress, Detective Eric Smith and Detective Sharesa Sparkman also testified at trial.
¶ 8. After a jury trial, Grubbs was found guilty and sentenced to twenty years in the custody of the Mississippi Department of Corrections as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev.2000). Grubbs filed motions for a judgment notwithstanding the verdict or, in the alterative, a new trial, which were denied.
LAW AND ANALYSIS
I. WHETHER THE TRIAL COURT ERRED IN INSTRUCTING THE JURY
¶ 9. Grubbs contends that the trial court erred by granting Instructions S-3 and S-4 and refusing Instructions D-l, D-2, D-2A and D-3. The Mississippi Supreme Court has held the standard of review for challenges to jury instructions is as follows:
[T]he instructions are to be read together as a whole, with no one instruction to be read alone or taken out of context. A defendant is entitled to have jury instruction given which present his theory of the case. However, the trial judge may also properly refuse the instructions if he finds them to incorrectly state the law or to repeat a theory fairly covered in another instruction or to be without proper foundation in the evidence of the ease.
Thomas v. State, 818 So.2d 335, 349(¶ 47) (Miss.2002)(quoting Woodham v. State, 779 So.2d 158, 163(¶24) (Miss.2001)). Therefore, “the appellate court must read the jury instructions as a whole and make a determination of whether or not the law is fairly and adequately represented.” Harris v. State, 892 So.2d 830, 834(¶ 14) (Miss.Ct.App.2005).
A. Instruction S-3
¶ 10. Instruction S-3 offered by the State is the “McDaniel Rule” which provides that voluntary intoxication is not a defense to a crime. McDaniel v. State, 356 So.2d 1151, 1153 (Miss.1978). The court allowed the instruction because there was substantial evidence in the case concerning the fact that Grubbs had been drinking on the night in question. Additionally, the court noted that prospective jurors, who were not chosen, indicated that drinking might be an excuse for the acts Grubbs may have committed.
¶ 11. Grubbs claims that there was no issue sufficient to justify granting this instruction because he never claimed to be intoxicated. The State contends, although the intoxication of Grubbs was not specifically relied on as a defense, it was an issue for resolution by the jury. In Norris v. State, 490 So.2d 839, 842 (Miss.1986), Norris argued that he did not request an intoxication defense instruction and, therefore, the McDaniel instruction should have been denied. The court stated, although Norris did not expressly make intoxication a defense, it is clear that intoxication was made an issue by Norris. Id. The court held that a reasonable jury could infer from Norris’s testimony that he was drunk and did not know what he was doing. Id. Therefore, the McDaniel instruction was correctly given. Id.
¶ 12. In this case, the trial court held that there was substantial evidence that Grubbs had been drinking on the night in question. The court referenced two witnesses who indicated that Grubbs was intoxicated as well as the fact that he was asked to take an alcohol test. Also, Grubbs admitted that he drank four beers. Therefore, “a reasonable juror could infer *937 that [Grubbs] did not have the requisite intent to commit the crime; this is exactly what the McDaniel rule prohibits.” Norris, 490 So.2d at 842.
¶ 13. Grubbs contends that it was an abuse of discretion to grant the instruction because it negated the State’s burden to prove that Grubbs intentionally assaulted Jamison with a deadly weapon. “[T]he purpose of the McDaniel rule is to remove voluntary intoxication as a defense, not to provide an affirmative instruction for the State which might mislead a jury into thinking that it is not necessary to prove intent, when intent is a requisite ingredient of the offense.” Lee v. State, 403 So.2d 132, 134 (Miss.1981). The State contends that the instruction did not negate its burden because the trial court granted other instructions which stated that the state had the burden of proving every element of the crime. As long as the jury instructions read as a whole make it clear that the State has the burden of proving all of the elements of the crime, the McDaniel instruction does not negate the State’s burden but rather sets forth guidance for the jury. Id. Therefore, this issue is without merit.
B. Instruction D-l
¶ 14. Grubbs contends that the trial court erred in failing to allow a lesser offense instruction on simple assault. Grubbs contends that there was an adequate evidentiary basis for the instruction and the rejection of the instruction deprived him of his fundamental right to a fair trial. The trial court held that there was not an adequate evidentiary basis for the instruction.
¶ 15. Under Mississippi Code Annotated section 97-3-7 the definition of simple assault reads: “(1) [a] person is guilty of simple assault if he (a) attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or (b) negligently causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm_” Under Mississippi Code Annotated section 97-3-7(1) subpart (b), Grubbs must have acted negligently. There is no evidence in the record that Grubbs acted negligently. The victim was stabbed six times. Grubbs admits that he swung at the victim with a knife. Grubbs gave a statement to the police in which he stated that he struck the victim with a fingernail cleaner and Grubbs did not deny that he stabbed the victim when he testified at trial. Grubbs claims he was acting in self-defense and a self-defense jury instruction was given. Therefore, a reasonable juror could only find that he knowingly struck the victim with a knife with the intent to cut him.
¶ 16. The only other definition that Grubbs suggested the jury be instructed on was the simple assault charge under Mississippi Code Annotated section 97-3-7(l)(a). This court has held that “[t]he difference between simple assault and aggravated assault lies in the statutory language ‘with a deadly weapon.’ ” Harris v. State, 892 So.2d 830, 835(¶ 17) (Miss.Ct.App.2005). “This suggests a statutory scheme where conduct which is simple assault under Section 97 — 3—7(l)(a) becomes aggravated assault under Section 97-3-7(2)(b) when done ‘with a deadly weapon.’ ” Hutchinson v. State, 594 So.2d 17, 19 (Miss.1992). On the night of the assault, Grubbs told the police that he stabbed the victim with a fingernail cleaner. However, at trial, Grubbs testified that he swung at the victim with a knife, which he believed to be closed. The fact that Jamison was stabbed with a knife six times is undisputed. An eyewitness testified that Grubbs attacked Jamison and when Jamison tried to get away from Grubbs, Grubbs fell on *938 top of him and stabbed him several times in the right arm and leg. A reasonable juror would not believe that Grubbs thought the knife was closed, based on the evidence.
¶ 17. “Our law is well-settled that jury instructions are not given unless there is an evidentiary basis in the record for such.” Fairchild v. State, 459 So.2d 793, 800 (Miss.1984) (citing Colburn v. State, 431 So.2d 1111, 1114 (Miss.1983)). “In order to be entitled to a lesser-ineluded offense instruction there must be some evidence in the record from which a jury could, other than by mere surmise, find a defendant not guilty of the crime charged and at the same time find him guilty of a lesser-ineluded offense.” Washington v. State, 794 So.2d 253, 259(¶ 11) (Miss.Ct.App.2001). However, the Mississippi Supreme Court has repeatedly held that
the fact that the evidence is sufficient to support a verdict of guilty of a lesser included offense does not necessarily preclude our reversal for failure to grant the lesser-ineluded instruction or even inform our decision on that point. The test is whether there was evidence in the record so that a reasonable juror could have concluded that the accused was guilty of simple assault....
Harbin v. State, 478 So.2d 796, 799 (Miss.1985). As stated above, no reasonable juror could believe that Grubbs was guilty only of simple assault. “Where, as here, uncontradicted physical facts so overwhelmingly support a finding of aggravated assault and render so unreasonable the suggestion that the accused may have been guilty only of simple assault, reversal is not required.” Id. Therefore, this issue is without merit.
C. Instruction S-4
¶ 18. Grubbs contends that the trial court abused its discretion by granting Instruction S-4 and refusing Instructions D-2, D-2A or D-3. Instruction S-4 states:
The Court instructs the jury that to make an assault justifiable on the grounds of self-defense, the danger to the defendant must be either actual, present and urgent, or the defendant must have reasonable grounds to apprehend a design on the part of the victim to kill him or to do him some great bodily harm, and in addition to this he must have reasonable grounds to apprehend that there is imminent danger of such design being accomplished. It is for the jury to determine the reasonableness of the ground upon which the defendant acts.
Instruction D-2 states:
The Court instructs the jury that to make an assault justifiable on the grounds of self-defense, the danger to Esau Grubbs must have been either actual, present and urgent, or Esau must have had reasonable grounds to apprehend a design on the part of Savoy Jamison to do him some bodily harm with a deadly weapon. In addition to this, there must have been imminent danger of such design being accomplished. It is for the jury to determine the reasonableness of the grounds upon which Esau Grubbs acted. It is the state’s burden to prove, beyond a reasonable doubt, that Esau Grubbs did not act in necessary self-defense, If you find that Esau Grubbs acted in necessary self-defense as defined above, you must find him not guilty.
Instruction D-2A is the same as Instruction D-2 except it reads “to kill him or to do some great bodily harm,” rather than “to do him some bodily harm with a deadly weapon.”

1. Refusing Instructions D-2 and D-2A

¶ 19. Grubbs contends that Instruction S-4 held him to an unreasonable *939 burden which required him to prove that Jamison intended to kill him or do bodily harm before he could justifiably assert the right to self-defense. Grubbs also contends that the instruction was a “one-size-fits-all” instruction that restricted his theory of defense to the jury.
¶ 20. As stated above, Instruction D-2 and D-2A are very similar. At trial, counsel for Grubbs wanted instruction D-2A to be given instead of S-4. Counsel stated “pjt's almost an identical instruction except it adds two sentences at the end that require the Court to instruct the jury that it is the State’s burden to disprove self-defense once it’s laid out, or they must find him not guilty if they find that he acted in necessary self-defense.” The trial court held that Instruction S-1A required the State to prove the actions of Grubbs were not in necessary defense beyond a reasonable doubt. The trial court can refuse instructions if he finds them to repeat a theory fairly covered in another instruction. Coleman v. State, 915 So.2d 468, 476(¶ 81) (2005). Therefore, the court properly refused Instructions D-2 and D-2A.

2. Refusing Instruction D-3

¶21. Regarding Instruction D-3, Grubbs submitted Instruction D-3 and, in the alterative, D-3A. Instruction D-3 reads:
The Court instructs the Jury that one claiming self-defense may not use more force than reasonably appears necessary to protect himself from bodily harm under the circumstances then and there existing. Whether or not Esau Grubbs exceeded that amount of force is for you, the jury, to determine.
Instruction D-3A replaces the words “to protect himself from bodily harm” with the words “to save his life or protect himself from great bodily harm.” The trial court found D-3 and D-3A were substantially the same and allowed Instruction D-3A because it was the more correct instruction. As stated above, the trial court can refuse instructions if it finds them to repeat a theory fairly covered in another instruction. Id. Read as a whole, the instructions fairly and adequately represent the law. Harris v. State, 892 So.2d 830, 834(¶ 14) (Miss.Ct.App.2005). The court properly refused Instruction D-3. Therefore, this issue is without merit.
II. WHETHER THE TRIAL COURT ERRED IN DENYING THE MOTION FOR DISCOVERY
¶ 22. Grubbs contends that the trial court erred in denying his motion for discovery seeking the criminal conviction history of Jamison, a denial which he claims deprived him of his federal and state constitutional rights to a fair trial, effective assistance of counsel, compulsory attendance of witnesses and due process of law. The trial court held that there was not a discovery rule requirement for the State to produce the victim’s criminal record. The trial court stated this could have a chilling effect on crime victims and would not be in the interest of judicial economy or the criminal justice system.
¶ 23. Grubbs contends that he is entitled to such information under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Brady held “that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.” Id. at 86, 83 S.Ct. 1194. In U.S. v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) the court held that “[t]he evidence is material only if there is a reasonable probability that, had the evidence been disclosed to *940 the defense, the result of the proceeding would have been different.” The court defined reasonable probability as “a probability sufficient to undermine confidence in the outcome.” Id.
¶ 24. Grubbs alleges the trial court precluded effective appellate review of the issue because the court refused to take the criminal conviction history of Jamison under seal. Therefore, Grubbs contends that this Court cannot adequately evaluate the materiality or the potential impact the criminal history of Jamison would have on the verdict. This Court must evaluate the omission in the context of the entire record. U.S. v. Agurs, 427 U.S. 97, 112, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).
¶25. “[I]f the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.” Id. at 113, 96 S.Ct. 2392. That is not the posture of this case. If “there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial.” Id. This issue is without merit.
III. WHETHER THE TRIAL COURT ERRED IN DENYING THE ASSISTANCE OF A DNA EXPERT
¶ 26. Grubbs contends that the trial court erred in denying his request for the assistance of an expert to test DNA found on a knife. Grubbs contends that the denial of the motion is a violation of his fundamental rights. We find the trial court did not err in denying the motion for DNA assistance.
¶ 27. On July 15, 2004, the State went to the Jackson Police Department crime lab and inquired whether any tests had been run on a red stain which was found on the knife. The State was informed that testing determined the red stain was human blood. The State immediately gave the evidence to Grubbs and Grubbs filed a motion requesting expert assistance. Grubbs claims his story of self-defense would be corroborated if the DNA found on the knife matched his DNA, because he alleges that he was stabbed by a knife possessed by Jamison. Grubbs contends that he did not have access to the evidence until July 15, 2004. Grubbs realized this would delay the trial and agreed to waive the motion for a speedy trial.
¶ 28. The State contends that the motion for expert assistance was merely an attempt for a continuance. The State argues that Grubbs should not be surprised that there was testing conducted on the red stain because Grubbs was on notice from the discovery produced by the State on September 8, 2003. On September 8, 2003, Grubbs signed and received the crime scene report which stated that two samples of a red stain were collected from the knife. At the end of the police report dated March 29, 2003, Officer Lance Scott stated that he observed blood on the serrated edge of the knife while he was securing the knives into the evidence locker. The report stated that Officer Scott filled out a lab request to verify that the substance was blood on the knife. On September 8, 2003, Grubbs also received a copy of the lab request which stated that testing would be conducted to verify that the stain on the knife was human blood.
¶ 29. On July 16, 2004, three days before trial was scheduled to begin, there was a hearing on the motion requesting expert assistance. The trial court held that the defendant should have been on notice of the blood on the knife in September of 2003. The court held that Grubbs received a crime report in which Officer Scott stated he saw blood on the serrated edge of the knife. Grubbs knew there were samples of a red stain collected from the knife and that a lab request was made *941 to test the stains. The court held that this was “notice sufficient to require an inquiry.” The court also stated, although the State did not follow up on the inquiry until July 15, 2004, “it doesn’t justify the argument in the opinion of the Court that defense counsel was not on notice back on September 8th of 2003 when discovery was furnished to it.” The trial court denied the request because it was untimely. The trial court ruling was also based, in part, on its obligation to honor the defendant’s continued requests for a speedy trial, although now waived, and in the interest of judicial economy.
¶ 30. There is not a constitutional obligation by the State to provide an indigent defendant with the costs of expert assistance upon every demand. Johnson v. State, 476 So.2d 1195, 1202 (Miss.1985). Expert assistance should be considered on a case-by-case basis after the court considers whether a defendant would be prejudiced by the denial of expert assistance. Id. This Court must reverse the decision of the trial court if the trial court abused its discretion by denying the motion requesting expert assistance. Grayson v. State, 806 So.2d 241, 254(¶ 36) (Miss.2001). Therefore, this Court will not reverse the trial court unless “an abuse of discretion occurred such that the defendant was denied due process whereby the trial was fundamentally unfair.” Richardson v. State, 767 So.2d 195, 197(¶ 7) (Miss.2000).
¶ 31. “In determining whether a defendant was denied a fair trial because of failure to appoint or allow funds for an expert, some of the factors to consider are whether and to what degree the defendant had access to the State’s experts, whether the defendant had the opportunity to cross-examine those experts, and lack of prejudice or incompetence of the State’s experts.” Townsend v. State, 847 So.2d 825, 829(¶ 13) (Miss.2003) (citing Fisher v. City of Eupora, 587 So.2d 878, 883 (Miss.1991)). “This Court has also considered to what extent the State’s case depends upon the State’s expert, Tubbs v. State, 402 So.2d 830, 836 (Miss.1981), and the risk of error in resolving the issue for which the expert is requested.” Johnson v. State, 529 So.2d 577, 592 (Miss.1988). Id. Considering these factors, this Court cannot find that Grubbs was denied a fair trial. Grubbs had access to the same information as the State, Grubbs was not prejudiced by the testing and Grubbs was on notice that testing was being done on the red stain. Additionally, to prevent any prejudice, the State agreed to withdraw the Jackson Police crime lab report which stated that the stain on the knife was verified as human blood. The State also agreed to keep the blade of the knife wrapped up at trial so that the red stain was not visible and the State agreed not to mention that there was blood found on the knife.
¶ 32. The State of Mississippi does not summarily grant requests for assistance. Townsend, 847 So.2d at 829(¶ 14) (Miss.2003). The requests must be necessary to preserve the defendant’s due process guarantees. Id. In the present case, the DNA testing would have been of little assistance to Grubbs and, therefore, was not necessary to preserve Grubb’s due process guarantees. Jamison and Johnson both testified that Grubbs attacked Jamison and all but one of Jami-son’s wounds were to the back of his body. No one saw Jamison with a knife and, although Grubbs testified that Jamison had a knife, he could not describe the knife. If the blood on the knife was found to be Grubbs’ blood, it would add little support to his theory of self-defense. There are two eyewitnesses who saw Grubbs break the window and it is undisputed that Grubbs had a cut on his hand. Additionally, on the night the assault occurred, Grubbs confessed to the police that *942 he stabbed Jamison. Given this evidence, a DNA expert would have been of little assistance to his defense.
¶ 33. This Court will not reverse unless an abuse of discretion by the trial judge denied the defendant due process whereby the trial was fundamentally unfair. Grubbs was not denied a fair trial nor was his request for expert assistance necessary to preserve his due process guarantees. Therefore, the trial court did not err in denying the motion for assistance. This issue is without merit.
¶ 34. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF AGGRAVATED ASSAULT WITH A WEAPON AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.