¶ 1. Antonio Brown was convicted of burglary and armed robbery. He appeals, assigning as error that his statement to police should have been suppressed, that a continuance was required after Brown failed to return to the courtroom after a lunch recess, and that a mistrial or a new trial should have been granted. We reject all these complaints and affirm.
 FACTS
¶ 2. During the evening of May 3, 2000, Antonio Brown broke into the home of Evelyn McGill, an elderly neighbor of Brown's. McGill was sleeping at the time but awoke to banging on her front door and someone yelling to be let into the home. Brown forced his way through the locked door and into the bedroom, sprayed McGill with a pepper spray, struck her in the head with a brick, and then took $400 in cash McGill kept hidden in her pillowcase.
¶ 3. McGill immediately identified Brown to police. The following day, Brown voluntarily presented himself to authorities to answer questions about the burglary. Brown was accompanied by his mother and a bail bondsman. Brown was taken *Page 599 
alone to a processing area where he was advised of his constitutional rights, which he waived in writing. He then admitted to the events in McGill's home. Brown was arrested and later indicted for burglary and armed robbery.
¶ 4. On the first day of trial, Brown failed to return to court after the lunch recess. Defense counsel moved for a continuance. That was denied. The trial proceeded and resulted in Brown's conviction of the two felonies and a sentence of imprisonment.
 DISCUSSION 1. Admissibility of statement
¶ 5. Brown first asserts that his statement to police and the signed waiver of his constitutional rights should have been suppressed because both were involuntarily given.
¶ 6. Chief among Brown's arguments is his claim that police believed him to be seventeen years old at the time that he gave his statement. He was eighteen. He argues that a parent should have been present at the time that he was questioned. By statute, if a child is taken into custody "in a matter in which the Youth Court has original exclusive jurisdiction," his parents or guardian should be invited to be present during questioning. Miss. Code Ann. § 43-21-303(3) (Rev. 2000). Where original jurisdiction lies with the circuit court, parental presence is not a pre-requisite to admissibility of a minor's confession.Horne v. State, 825 So.2d 627, 639 (Miss. 2002).
¶ 7. Both the Youth Court and circuit court statutes grant original jurisdiction to the circuit court in this matter. The Youth Court does not have original jurisdiction concerning any act committed by a child which carries the possible criminal penalty of life imprisonment. Miss. Code Ann. § 43-21-151(1)(a) (Rev. 2000). Such is the potential penalty for armed robbery, one of the crimes with which Brown was charged. However, no child under the age of thirteen may be held criminally responsible. Miss. Code Ann. § 43-21-151(3) (Rev. 2000). Even had Brown been only seventeen years old, he could be questioned without his mother's presence.
¶ 8. In addition to his youth, Brown suggests that other facts made his statement involuntary. Brown refers to precedents in which an investigation of the mental capacity of a defendant was needed when examining a confession's voluntariness. The trial court did not make that inquiry. However, the state supreme court has applied a United States Supreme Court precedent to hold that absent police misconduct in obtaining a waiver, there is no due process requirement to examine a defendant's mental state when a court determines whether a confession was voluntary. Butler v. State, 608 So.2d 314, 322-23 (Miss. 1992) (citingColorado v. Connelly, 479 U.S. 157 (1986)).
¶ 9. Brown does not claim that his statements to police were made as a result of police coercion or promises of leniency. He provided no evidence of unacceptable methods in obtaining his statements. There was no foundation laid here for an inquiry into the defendant's mental capacity prior to the trial court's holding that the statement was voluntary.
¶ 10. Brown also argues that he was incompetent to make a knowing and intelligent waiver of his rights, based upon limited intellect, education and intimations of intoxication. A defendant must be aware of the nature of his self-incrimination rights and comprehend the consequences of waiving them. Richardson v. State, 767 So.2d 195, 204 (Miss. 2000). We *Page 600 
review whether a defendant possessed sufficient faculties to understand the rights that he waived as well as whether police overreached in obtaining the confession by exploiting the handicap of a mentally weak person. Neal v. State, 451 So.2d 743, 756 (Miss. 1984). These are questions for the trial court to examine as part of the totality of the circumstances. Richardson, 767 So.2d at 204. To be considered are the defendant's experience and familiarity with the criminal justice system, intellectual capacity, educational background, degree of literacy, emotional state and any mental disease or other defect. Holland v.State, 587 So.2d 848, 860 (Miss. 1991).
¶ 11. Brown never went beyond hinting that he suffered a mental deficiency that rendered him unable to understand his rights and the consequences of waiving them. He presented no evidence to support that theory. The most he advanced was the arresting officer's agreement that Brown was "not an intelligent person" and largely without formal education. This is insufficient to establish a sufficient lack of cognitive ability to impair Brown's comprehension.
¶ 12. Likewise, if a defendant is acting under the influence of alcohol or drugs, admissibility depends upon the degree of intoxication.Baggett v. State, 793 So.2d 630, 634 (Miss. 2001). Brown rests his claim on this point upon the fact that the arresting officer refused to offer an opinion as to whether or not Brown was under the influence of an intoxicating substance at the time he waived his constitutional rights. Brown does not assert that he was under the influence of alcohol or drugs, merely that the State failed to establish that he was not. But the State did address this point.
¶ 13. The record shows that the arresting officer stated on direct examination that Brown had not been under the influence of any intoxicants when he appeared at the police station. The officer further stated that Brown appeared to understand the warnings about his rights and that the waiver of those rights had been freely and voluntarily given. Even if the officer was less cooperative on cross-examination, still evidence existed to support a voluntary waiver.
¶ 14. As to a suspect's fear, that may be considered when looking at the totality of the defendant's mental state. However, there is no evidence to suggest Brown's fear was so disabling as to render him unable to comprehend his actions. Perhaps all but the most hardened criminals suffer anxiety when facing official questions about a violent crime.
¶ 15. Lastly, Brown asserts the trial court failed to take into account the totality of the circumstances when finding the waiver to have been knowing and voluntary. It is true that the trial judge at one point said that the only thing that mattered was if the rights warnings had been given. This was in response to a defense statement which improperly argued that in addition to the generic warnings, a defendant must be told the specific crime of which he is suspected before he can be interrogated. The trial court stated his correct understanding of the law.
¶ 16. The trial court did not give detailed findings of facts when it determined Brown's statement was voluntary and admissible. We therefore review the entirety of the record to make an independent determination of the voluntariness of Brown's waiver of rights. Coversonv. State, 617 So.2d 642, 647 (Miss. 1993). That review convinces us that sufficient evidence was presented at the suppression hearing to support a finding that Brown's statement was admissible. *Page 601 
 2. Trial in absentia
¶ 17. Brown asserts that a continuance should have been ordered after he failed to return after the lunch recess on the first day of trial. The remainder of the trial was conducted in Brown's absence.
¶ 18. A statute explicitly provides for trial in absentia when the accused is in custody and consenting to trial in his absence. Miss. Code Ann. § 99-17-9 (Rev. 2000). Precedents make plain that even beyond the statute's language, a defendant waives his presence at trial if, after being present at the commencement of proceedings, he thereafter voluntarily absents himself. Sandoval v. State, 631 So.2d 159, 161 (Miss. 1994). The defendant's presence at the commencement of trial satisfies the custody requirement. McMillan v. State, 361 So.2d 495, 497 (Miss. 1978). Consent to carry on will be presumed from a defendant's voluntary refusal to return to the proceedings. As Justice Alexander Hamilton Handy wrote long ago, if the defendant is present for the commencement of trial but thereafter departs or escapes, "his own illegal act should not be permitted to thwart the process of law to his advantage." Sandoval, 631 So.2d at 162 (quoting Price v. State,36 Miss. 531, 542-43 (1858)).
¶ 19. Brown does not contest that he was present at the commencement of trial and remained through the selection and swearing in of a jury. We find that the trial court validly proceeded with the trial in Brown's voluntary absence.
 3. "Golden Rule" argument
¶ 20. Brown's final assertion of error rests upon a comment made by the prosecution to the effect that the jury should put themselves in the place of the victim. Brown contends this constitutes a violation of the prohibition against "Golden Rule" arguments.
¶ 21. "Golden Rule" arguments are prohibited because they encourage jurors to act out of self-interest rather than a neutral review of the evidence presented at trial. Chisolm v. State, 529 So.2d 635, 640 (Miss. 1988). On the other hand, a prosecutor may comment upon the weight and worth of the evidence presented at trial. Butler, 608 So.2d at 318.
¶ 22. The transcript shows that the prosecution asked the jurors to put themselves in the place of the victim, Ms. McGill. That was in the context of urging the believability of the evidence that the victim had not actually seen her attacker and to ask the jurors to dismiss the vagueness of some of her testimony. The prosecution was exhorting the jurors to believe the victim even though there were gaps in her story because of the nature of her injuries. This was proper commentary upon the evidence presented and the weight to be given it.
¶ 23. THE JUDGMENT OF THE JASPER COUNTY CIRCUIT COURT OFCONVICTION OF COUNT I BURGLARY AND SENTENCE OF FIVE YEARS; AND COUNT IIARMED ROBBERY AND SENTENCE OF FIFTEEN YEARS WITH FIRST TEN YEARS TO BESERVED WITHOUT PAROLE, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENTOF CORRECTIONS WITH SENTENCES TO RUN CONCURRENTLY IS AFFIRMED. COSTS OFTHIS APPEAL ARE ASSESSED TO JASPER COUNTY.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, MYERS, AND GRIFFIS,JJ., CONCUR. IRVING AND CHANDLER, JJ., CONCUR IN RESULT ONLY. *Page 602