ISHEE, J.,
for the Court:
¶ 1. After a two-day trial in April 2010, George Wesley Devereaux was convicted in the Tate County Circuit Court of burglary of a building other than a dwelling and grand larceny. The trial court found Devereaux to be a habitual offender and sentenced him to seven years in the custody of the Mississippi Department of Corrections (MDOC) for the crime of burglary of a building other than a dwelling, and the court sentenced him to a consecutive term of ten years in the custody of the MDOC for grand larceny. Application of the habitual-offender statute enhanced Dever-eaux’s sentence to negate the possibility of parole, probation, or any other reduction of his sentence. Devereaux’s counsel filed motions requesting a new trial and a judgment notwithstanding the verdict, both of which were denied. Aggrieved, Devereaux appeals. Finding error, we reverse and remand for further proceedings consistent with this opinion.
FACTS
¶ 2. In November 2008, the caretaker of two unused buildings in Senatobia, Mississippi, discovered that the buildings had been burglarized and called the Tate County Sheriffs Office (sheriffs office). The sheriffs office immediately responded to the call and arrived on the scene to investigate. Deputies from the sheriffs office determined that while the exact date of the crime was unknown, it was speculated to have occurred within the prior week. The sheriffs office concluded that both buildings had been forcefully broken into and that missing items included, but were not limited to: two twin beds, a table and chairs, a dresser, a mirror, a couch, a stove, a refrigerator, a dishwasher, a sink, and carpet.
¶ 3. Further investigation revealed that several pieces of the furniture were subsequently delivered to the residence of an acquaintance of Corkney Watson. Watson, who is allegedly a well-known drug dealer in the area, agreed to testify against Devereaux regarding the burglary in exchange for a plea bargain. Accordingly, Watson identified Devereaux as a party to the crime, and the sheriffs office arrested Devereaux on December 1, 2008.
*389 ¶4. After Devereaux’s arrest, he was interrogated by a detective with the sheriffs office regarding the burglaries. Dev-ereaux requested the presence of David Walker, the public defender for Tate County, since Walker had previously represented him on prior charges and was representing him at the time of the instant crime on unrelated charges. After Walker’s arrival in the interrogation room, he advised Devereaux that he would object to any improper legal questioning on behalf of Devereaux and proceeded to make consistent indications that he was present in the capacity of providing Devereaux with legal counsel. While motioning toward Walker, the detective also noted to Dever-eaux that his legal counsel was present with him in the room.
¶ 5. However, before questioning began, the detective stated that she needed to read Devereaux his rights, and she proceeded to read aloud from a document summarizing Devereaux’s Miranda rights. At the bottom of the document was a section titled ‘Waiver of Rights,” wherein the detective recited that by signing the document, Devereaux was waiving his right to counsel and speaking to the detective without the assistance of a lawyer. Devereaux signed the form, and the interrogation began. During the interrogation, the detective stated: “If Mr. Walker thinks you don’t need to be telling me something, he’ll stop you.” Walker never stopped Devereaux from making any statements, nor did he object to any questions during the interrogation.
¶ 6. During questioning, Walker advised Devereaux that the prosecution takes a defendant’s cooperation into consideration during the defendant’s sentencing and advised him that, given the prosecution’s then-existing evidence, a conviction was likely; therefore, Devereaux should cooperate by telling the questioning officer everything he knew. On at least two separate occasions, Devereaux expressed concerns regarding a weakened defense due to a confession. Walker remained silent and allowed the questioning officer to assure Devereaux that he simply needed to tell the truth.
¶ 7. Devereaux subsequently told the detective that he helped Watson move furniture out of one of the buildings in question and into the residence of Watson’s acquaintance. However, he further claimed that Watson told Devereaux he owned the furniture and would pay Devereaux to help in loading and unloading the furniture because Devereaux had a truck that could facilitate the move. Devereaux asserted that it was only upon his arrest that he discovered the furniture was not Watson’s but was, instead, stolen.
¶ 8. Approximately one month after the interrogation took place, Walker sent Dev-ereaux a letter stating that he was not acting as Devereaux’s counsel at the time of the interrogation in question. Walker later stated to the trial court that he was unsure if he was acting as Devereaux’s counsel diming the interrogation because he did not know the exact parameters of his duties as a public defender.
¶ 9. The interrogation was videotaped and the prosecution sought to introduce it into evidence at trial. Defense counsel filed a motion to suppress, arguing that Walker was not acting as Devereaux’s counsel at the time of the interrogation or, in the alternative, provided ineffective assistance of counsel. Defense counsel further argued that because the interrogation addressed possible other crimes, it was inadmissible due to Mississippi Rule of Evidence 404(b), which prevents admission of evidence demonstrating prior bad acts. The trial court allowed the video to be introduced in its entirety with a limiting instruction to the jury. Consequently, *390 Devereaux took the stand at trial in order to rebut the video.
¶ 10. In addition to addressing the video’s content while on the witness stand, Devereaux also discussed his medical history, including the contraction and treatment of hepatitis C in approximately 2003 or 2004. Devereaux’s initial treatment consisted of oral medication, which he took for forty-eight weeks. Six months after the initial treatment was completed, Dev-ereaux tested positive again for hepatitis C and was placed on another oral treatment program for seventy-two months. Dever-eaux claims that he was mentally damaged by the treatments.
¶ 11. In approximately 2007 or 2008, Devereaux was admitted to the University of Mississippi Medical Center for physical and mental evaluations. Thereafter, Dev-ereaux asserts that his doctors determined he had adverse effects from his hepatitis C treatments, and he was subsequently placed on new medication in an attempt to counteract the effects of the prior harmful medications. Devereaux states that he was also referred to Communicare Medical Center in Senatobia, Mississippi, for follow-up evaluations. Devereaux claims that although he recovered from hepatitis C and the hepatitis C treatments, his memory was severely impaired by the medications he took and he continues to suffer from memory loss.
¶ 12. Subsequently, Devereaux was found guilty of burglary of a building other than a dwelling and of grand larceny and sentenced to seventeen years in the custody of the MDOC. Since he was also found to be a habitual offender, Devereaux’s sentence was enhanced to negate the possibility of any type of reduction of sentence or early release. Thereafter, he filed motions for a judgment notwithstanding the verdict and for a new trial. Both motions were denied. Aggrieved, Devereaux appeals and asserts that: (1) his statements made during the videotaped interrogation regarding his prior bad acts were inadmissible; (2) his Fifth Amendment rights were violated; (3) his Sixth Amendment rights were violated; (4) his trial counsel’s ineffectiveness deprived him of his constitutionally mandated right to a fair trial; (5) the trial court erred when it failed to grant his motion for a new trial; (6) all errors concerning violation of his fair trial rights were harmful; and (7) cumulative error deprived him of his fundamental right to a fair trial. We reverse and remand for further proceedings consistent with this opinion.
DISCUSSION

I. Miranda Rights

¶ 13. We will first address whether Devereaux’s Miranda rights were violated due to ineffective assistance of counsel. The United States Supreme Court has provided that a suspect in a criminal investigation may waive his Miranda right to have counsel present during an interrogation. Miranda v. Arizona, 384 U.S. 436, 475, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The purpose of Miranda is to “protect against violations of the Fifth-Amendment Self-Incrimination Clause.” Chamberlin v. State, 989 So.2d 320, 336 (¶ 54) (Miss.2008) (citing United States v. Patane, 542 U.S. 630, 636, 124 S.Ct. 2620, 159 L.Ed.2d 667 (2004)).
¶ 14. When proving that a suspect waived his or her Miranda rights, the prosecutor is met with a “heavy burden” to show the defendant “voluntarily, knowingly and intelligently waived” the rights. Miranda, 384 U.S. at 475, 86 S.Ct. 1602. This Court has held that in order for a waiver to be deemed voluntary, “[a] defendant must be aware of the nature of his self-incrimination rights and comprehend *391 the consequences of waiving them.” Brown v. State, 839 So.2d 597, 599 (¶ 10) (Miss.Ct.App.2003).
¶ 15. In this case, the first question the detective asked Devereaux during the interrogation was, “Who is your lawyer?” Devereaux responded: “David Walker.” The detective then proceeded to acknowledge that Devereaux had a lawyer but asked if Devereaux wanted to waive his rights and speak to the detective without his lawyer there. Devereaux responded that his lawyer needed to be present during the interrogation. Accordingly, the detective called Walker to be present with Devereaux during the questioning.
¶ 16. When Walker arrived in the interrogation room, he told Devereaux: “If [the detective] asks you anything improper, Mr. Devereaux, I will object; she will honor that objection; and she will stop or move on to something else.” However, at no point during the interrogation did Walker object to any questioning conducted by the detective. Furthermore, immediately after Walker advised Devereaux that he would object to improper questioning on Devereaux’s behalf, the detective began reading aloud from a document which she indicated was a summary of Devereaux’s Miranda rights.
¶ 17. Specifically, the detective stated: “You have the right to talk to a lawyer for advice before questioning and to have a lawyer with you during questioning ... which you have here now.” As she affirmed that Devereaux had a lawyer present with him in the interrogation room, she simultaneously gestured toward Walker, who was sitting at the table with them. She then immediately read aloud the following: “If you cannot afford a lawyer, one will be appointed to you before any questioning, if you wish. I believe Mr. Walker is already appointed for you.” Walker responded: “That is correct.” However, the detective then read the following: “If you decide to answer questions now without a lawyer present, you will still have the right to stop answering questions at any time. You also have the right to stop answering questions at any time without a lawyer.” She proceeded to read the information contained at the bottom of the document, which was titled “Waiver of Rights.” Therein, she requested that Dev-ereaux initial the following provisions, which she also read aloud: “I have read the statement of my rights and I understand what my rights are. I wish to make a statement and answer questions. I do not want a lawyer at this time.” Dever-eaux signed his initials and stated that he “guessed” that he understood what he was signing.
¶ 18. Although Walker told Devereaux that he was present at the interrogation as Devereaux’s attorney and that he would properly object to any improper questioning, Walker never objected to any questions and allowed Devereaux to sign a waiver of his Miranda rights prior to speaking with the detective. In fact, Walker signed the Miranda waiver form himself in the witness line of the document. Walker wrote his name on the witness line, followed by “TCPD,” which he later clarified was an abbreviation for “Tate County Public Defender.” Walker then remained in the room during the entirety of the interrogation.
¶ 19. Additionally, Devereaux made it known to the detective that he suffered from some mental instability and severe memory loss due to his contraction of and treatment for hepatitis C. The videotape clearly shows Walker discussing his impairments with the detective and with Walker. Devereaux displayed obvious inabilities to focus and respond appropriately during conversations he was having with the detective and with Walker. He fur *392 ther voiced concerns over his mental health and his corresponding ability to understand the proceedings taking place.
¶ 20. As such, we find that under no circumstances should Devereaux have been prompted to sign a form waiving his Miranda right to counsel when he had already requested counsel and the requested lawyer was present in the room with him. Walker and the detective made every indication, both explicit and implicit, that Walker was at the interrogation in order to represent Devereaux’s best interest during questioning, despite Walker’s later insistence that he was not serving as Devereaux’s counsel at the time of the interrogation. Given Devereaux’s ambivalence over whether or not he should give information to the detective, the detective went so far as to state: “Mr. Walker is your lawyer. He’s going to tell you when you can talk and when you can’t or when you need to. He gives you the legal advice.”
¶21. No logical interpretation of the situation could render the conclusion that Devereaux did not believe Walker to be acting as his counsel during the interrogation. Devereaux’s fragile mental condition necessitated the presence of a lawyer, to the point that Devereaux specifically requested one, in the form of Walker, and was told that Walker was present in the capacity of Devereaux’s lawyer. As such, Devereaux’s waiver of his Miranda right to have counsel present on his behalf during the questioning in order to prevent self-incriminating statements from being made was not, in any way, voluntarily, knowingly or intelligently made. Accordingly, we find the ensuing interrogation was a direct violation of Devereaux’s Fifth Amendment rights.
¶ 22. Since the statements made by Devereaux during the interrogation were unconstitutionally garnered, the entire interrogation falls within the “exclusionary prohibition against ‘fruit of the poisonous tree’ [which] applies to violations of the Fifth-Amendment privilege against self-incrimination.” Chamberlin, 989 So.2d at 336 (¶ 54) (quoting Brown v. Illinois, 422 U.S. 590, 599, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975)). None of the interrogation should have been presented to the jury due to the Fifth Amendment violation.
¶ 23. Furthermore, the interrogation video also included information regarding Devereaux’s criminal history. Although the trial court agreed to provide a “limiting” jury instruction to the jury, the Mississippi Supreme Court has stated that evidence of other crimes “tends to divert the minds of the jury from the true issue, and to prejudice and mislead them, and, while the accused may be able to meet a specific charge, he cannot be prepared to defend against all other charges that may be brought against him.” Robinson v. State, 35 So.3d 501, 506 (¶ 15) (Miss.2010) (citation omitted). Therefore, we find that Devereaux’s constitutional rights were violated during the interrogation and that the trial court committed reversible error by admitting the interrogation into evidence.

II. Ineffective Assistance of Counsel

¶ 24. We next address Dever-eaux’s claim that he received constitutionally ineffective assistance of counsel during the pretrial interrogation. In order to prevail on an ineffective-assistance-of-counsel claim, an appellant must meet a two-prong test by proving that: (1) the attorney’s performance was defective, and (2) such performance deprived the appellant of a fair trial. Stringer v. State, 454 So.2d 468, 477 (Miss.1984). The United States Supreme Court promulgated this test in 1984 and went on to explain that “[t]he benchmark for judging any claim of ineffectiveness must be whether counsel’s *393 conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.” Strickland v. Washington, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Furthermore, when considering a claim of ineffective assistance of counsel, an appellate court must “strongly presume that counsel’s conduct falls within a wide range of reasonable professional assistance, and the challenged act or omission might be considered sound trial strategy.” Bennett v. State, 990 So.2d 155, 158 (¶ 9) (Miss.2008) (quoting Strickland, 466 U.S. at 689, 104 S.Ct. 2052).
¶ 25. In this case, as stated above, Walker gave every indication to Devereaux that he was present at the interrogation in furtherance of Devereaux’s best interest. It is clear from the record that Walker was relying on Devereaux to give him sound legal advice and guide him through the interrogation. Such guidance included Walker’s advising Devereaux as to what consequences his statements to the detective would have for his defense at trial.
¶ 26. At one point during questioning, the detective told Devereaux that he just needed to “quit hem-hawing around” and “tell the truth.” Devereaux responded by asking: “What I want to know is if I were to tell you everything I know, what’s it going to do to me? ... Are you going to cut [Walker’s] legs out from under him to where I have no defense? Walk in there with the D.A. and say Well this man confessed to doing this and let’s just throw him away?’ ” The detective responded by referencing Walker’s presence in the room and blatantly saying that Walker was there to advise Devereaux of when he should and should not speak.
¶ 27. Shortly thereafter, Walker stated the following: “One thing I’ll tell you, when you have multiple defendant cases, the defendant who cooperates first usually gets the most help. And from what I understand, maybe looks like you may be the first one coming. If [the detective] gets frustrated with you and just gets up and walks out, and says ‘I’m through with you’ and moves on to [the other suspects], it’s not going to be in your best interest.” A minute or two later, Walker then said:
What it looks like to me, Mr. Devereaux, is that [the detective] has enough information to convict you. She’s a straight shooter. She’s not going to give it to you, lie to you. So I would encourage you to be straightforward with her. It’s kinda that simple. Looks to me like she may be more interested in your charge partners. If you want to be straightforward and tell her what you know, I’m quite sure she’ll give you, you know, credit for it at a later time. But I don’t have all day[,] and she doesn’t have all day.
¶ 28. After the detective reinforced Walker’s suggestion that Devereaux tell her what he knew, Devereaux stated: “I’m just trying to understand what it’s going to do to me.” In response, the detective said: “That’s what you’ve got [Walker] for, to help you down the road.” Devereaux again asked: “That’s what I’m trying to understand. If I make a statement, are you going to be able to defend me or is it going to cancel that out, is there not going to be any defense?” Walker replied: “Well, I mean, if you’re innocent, you don’t need to talk to [the detective]. But if you think she’s got a strong case on you or you’re, in fact, guilty, you do need to cooperate in my opinion.”
¶ 29. Shortly thereafter, Devereaux told the detective everything he knew about the burglaries in question and about an unrelated burglary the detective was investigating. Walker never objected to the detective’s questioning, nor did he stop *394 the interrogation to advise Devereaux against self-incrimination. To the contrary, Walker advised Devereaux to cooperate fully with the detective and tell her what she wanted to know. In essence, Walker encouraged Devereaux to incriminate himself.
¶ 30. It is indisputable that Walker did not act in the best interest of Devereaux when he allowed Devereaux to sign a waiver of his Miranda rights, nor did he act in his best interest during the interrogation. Walker’s failure to object to any of the detective’s questions and his failure to prevent Devereaux from making incriminating statements cannot be deemed “trial strategy” or anywhere within the realm of reasonable professional assistance.
¶ 31. Although Walker attempted to denounce his representation of Dever-eaux both on the stand and through a letter sent well after the questioning, Walker made every indication during the interrogation that he was Devereaux’s legal counsel. As stated by the Mississippi Supreme Court:
An attorney-client relationship exists when: (1) A person manifests to a lawyer the person’s intent that the lawyer provide legal services for the person; and (2)(a) The lawyers manifests to the person consent to do so, or (b) fails to manifest lack of consent to do so, knowing that the person reasonably relies on the lawyer to provide the services, or (c) a tribunal with power to do so appoints the lawyer to provide the services.
Baker Donelson Bearman Caldwell & Berkowitz, P.C. v. Sam Seay, 42 So.3d 474, 485 (¶ 30) (Miss.2010) (citing Singleton v. Stegall, 580 So.2d 1242, 1244 n. 2 (Miss.1991)). The mere title of “public defender” does not negate the full-service duties of a lawyer-client relationship. Walker was under a duty to act in Devereaux’s best interest from the moment Devereaux fell under the impression that Walker was his legal counsel. Otherwise, Walker had the duty to make it perfectly clear during the interrogation that he was not there on Devereaux’s behalf. Accordingly, we find reversible error in the trial court’s failure to address Devereaux’s receipt of ineffective assistance of counsel during the pretrial interrogation.

III. Violation of Fifth Amendment Right to Remain Silent

¶ 32. Devereaux also argues that the admission of the interrogation video violated his Fifth Amendment right to remain silent, as he was forced to take the witness stand in defense of the information within the video of his prior bad acts. Devereaux’s brief directs this Court’s attention to the case of Robinson v. State, 35 So.3d 501 (Miss.2010). In Robinson, the defendant made statements of prior bad acts during an interrogation, which was videotaped and admitted into evidence. Id. at 503 (¶¶ 3-6). The trial judge allowed the entire tape to be played to the jury, despite objections from defense counsel based upon the failure of the prosecution to redact portions related to the defendant’s prior bad acts. Id. In response, the Mississippi Supreme Court stated the following:
Not only had the damage been done with respect to the jury being presented with inadmissible, prejudicial evidence, but also, [the defendant’s] constitutional right to testify (or refrain therefrom) had been compromised.... Based upon the admission of this evidence, [the defendant] was presented with the options of either taking the witness stand in an attempt to mitigate the prejudice caused, or foregoing that right and permitting the jury’s consideration of such evidence without response. Subsequent testimony does not cure this error.
Id. at 507 (¶ 17).
¶ 33. Here, as in Robinson, Devereaux was faced with the option of taking the *395 stand in order to mitigate the prejudice caused by the jury’s consideration of the highly prejudicial and inadmissible interrogation video or remaining silent and allowing the jury to consider his silence as evidence in the wake of the video. Such an option creates an indefensible position by essentially forcing an accused to testify in his own defense. We, again, find reversible error in the admission of the interrogation video into evidence and the subsequent violation of Devereaux’s Fifth Amendment right to remain silent.
CONCLUSION
¶ 34. We hold that the pretrial interrogation of Devereaux was a violation of his Miranda rights and, therefore, constitutes reversible error. We further find that Devereaux received constitutionally defective assistance of counsel from Walker during the interrogation and that the defective performance deprived Devereaux of a fair trial. Finally, we determine that it was reversible error for the trial court to admit the interrogation video into evidence, as it subsequently violated Dever-eaux’s Fifth Amendment rights. Having found these issues to be dispositive of this appeal, we do not address the remaining interrelated issues. Accordingly, we reverse and remand this case for a new trial.
If 35. THE JUDGMENT OF THE TATE COUNTY CIRCUIT COURT IS REVERSED, AND THIS CASE IS REMANDED FOR A NEW TRIAL CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO TATE COUNTY.
LEE, C.J., GRIFFIS, P.J., MYERS AND CARLTON, JJ., CONCUR. IRVING, P.J., AND ROBERTS, J., CONCUR IN PART AND IN THE RESULT. BARNES AND MAXWELL, JJ., CONCUR IN RESULT ONLY. RUSSELL, J., NOT PARTICIPATING.