ISHEE, J.,
for the Court:
¶ 1. After robbing a hotel clerk, Walter Tard was convicted of armed robbery in the Madison County Circuit Court and sentenced to forty-five years in the custody of the Mississippi Department of Corrections (MDOC), with the last ten years suspended and with five years of supervised probation. Tard appeals, arguing that the circuit court erred by failing to suppress his confession to the police and denying his motion for a judgment notwithstanding the verdict (JNOV) or a new trial. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. On January 5, 2007, at approximately 7:45 a.m., Tard entered a Drury Inn in Ridgeland, Mississippi, walked up to the front desk, and asked an employee, Erica Bowden, where the bathroom was located. Bowden turned and pointed down the hall, and when she turned around, Tard gave her a note demanding $5,000. Bowden told him that she did not have that much cash, and Tard told her to give him what she had or he would “blow the f — ing place up.” While giving his threat, Tard lifted his shirt to display a gun in his waistband. Bowden then gave him about $92, which was all that she had in her cash drawer. After Tard took the money, he fled the hotel. Bowden called the police and stated that the man who robbed her was wearing a dark jacket, was close to six feet tall, and had protruding teeth.
¶ 3. During the subsequent investigation, the police determined that the demand note had been written on the back of a job application for Advance Auto Parts. After visiting several local Advance Auto Parts stores and comparing information on the job application/demand note with applications from the stores, Detective Donald Martin of the Ridgeland Police Department obtained the names of a few suspects, one of whom was Tard. The police put together a photographic lineup for Bowden, and she identified Tard as being the man who had robbed her.
¶ 4. Soon after, officers with the Ridge-land Police Department arrested Tard and videotaped his interview with Detective Martin. At the beginning of the interrogation, Tard denied robbing the hotel; however, he later confessed. Tard’s account of the robbery changed several times during the interview. He would confess and provide details of the robbery, and then change his story and assert his innocence. In addition, Tard’s details of the robbery conflicted with those provided by Bowden in her statement to the police. For instance, Tard stated that he stole over $200, but the amount taken was $92. Bowden claimed that she saw Tard with a pistol in his waistband, but Tard insisted that he was carrying a revolver.
¶ 5. The interrogation lasted approximately two hours. During one of Tard’s admissions, he stated that a man named Kentell Griffin planned the robbery and drove the. getaway car. But Tard later recanted this story and said that he committed the robbery alone, with no assis *583 tance. At the end of the interrogation, Tard again professed his innocence.
¶ 6. Tard was indicted on May 22, 2007, for armed robbery pursuant to Mississippi Code Annotated section 97-3-79 (Rev. 2004). Tard pleaded not guilty, and the matter was set for trial. More than a year later, on December 12, 2008, the circuit court held a suppression hearing to consider the admissibility of Tard’s confession. At the hearing, Detective Martin testified that he made several misrepresentations to Tard to get him to confess to the robbery. Those misrepresentations included telling Tard they had a video of him inside of the hotel, which they did not; and telling Tard they had his fingerprints on a note that was passed, which they did not. Tard’s aunt also testified, claiming Tard had subnormal mental capacity, suffered from attention deficit disorder (ADD), had previously failed his GED twice, and had received counseling for behavioral problems.
¶ 7. The circuit court denied Tard’s motion to suppress the confession, noting that investigators use many different techniques to extract statements and confessions from suspects, and that no examples of coercion or promises of reward were indicated during the confession. The circuit court also denied Tard’s claim of diminished mental capacity, noting that no medical diagnosis of subnormal mental capacity or testimony, other than that given by his aunt, had been submitted to the court. Thus, Tard proceeded to trial.
¶ 8. After two mistrials, Tard entered a guilty plea on February 3, 2009. However, at the sentencing hearing on March 9, 2009, the circuit court set aside the guilty plea following Tard’s request for withdrawal. A third trial began on May 5, 2009, where Tard was found guilty of armed robbery.
¶ 9. At trial, Detective Martin admitted that he made several misrepresentations in order to obtain a confession from Tard. Detective Martin told Tard that the police had video-surveillance tapes showing that he committed the robbery, and that he also had lifted Tard’s fingerprints from the hotel counter and the demand note. Detective Martin testified that such misstatements are permissible in an interrogation to gain a confession. Detective Martin also admitted that after learning Tard’s girlfriend was pregnant, he told Tard that in order to help himself to be able to see his child at some point in the future, it was in Tard’s best interest to cooperate with the police. Detective Martin further admitted that he gave Tard the impression that if Tard confessed, Detective Martin would inform the judge of the cooperation, although he did not give promises for the judge’s leniency.
¶ 10. Bowden testified that Tard was the man who robbed her. She was questioned on direct examination and also on cross-examination about her description of Tard as having buckteeth. Her initial statement to the police indicated that Tard had about four or five front teeth that protruded from his mouth. Tard’s attorney pointed out that Tard did not appear to have buckteeth. However, the photo used in the lineup does indicate that Tard may have an overbite.
¶ 11. When Tard testified at trial, he again asserted his innocence. On cross-examination, Tard stated that he confessed to the crime during the interrogation, because he thought he was being framed and was concerned that what Detective Martin had been telling him about the evidence could be true. He thought the police may have some of his DNA because he had filled out a job application from Advance Auto Parts shortly before the robbery occurred. While Tard complained about De *584 tective Martin’s misrepresentations, he never claimed that Detective Martin made any threats, or promised him anything in return for a confession.
¶ 12. Betty Griffin (Griffin) also testified for the defense. Griffin was a housekeeper at the Drury Inn, and was present the morning of the robbery. She testified that at the time of the robbery, she was in a housekeeping meeting in a room adjacent to the front counter. She saw Bow-den speaking to a man, but could only see the man’s profile. Griffin’s testimony conflicted with Bowden’s, in that she stated that the robbery occurred around 8:10 a.m., not 7:45 a.m. She also gave a different description of the robber, claiming he wore a yellow jacket with patches; was only slightly taller than Bowden, who was 5'2"; and did not have buckteeth.
¶ 13. The jury returned a guilty verdict. Tard filed a motion for a JNOV and for a new trial on June 11, 2009. The circuit court denied his motion on May 3, 2010. Tard now timely appeals.
DISCUSSION
I. Tard’s Statement to the Police
¶ 14. Tard first argues that his confession to the police should have been suppressed because it was involuntary. Tard claims that his low intelligence, coupled with the intentional misrepresentations by Detective Martin during the interrogation, render his confession inadmissible.[1] He also provides an alternative argument that even if the circuit court’s pretrial ruling was not manifest error, subsequent trial testimony showed that Tard was improperly induced to confess.
¶ 15. We will reverse a trial court’s denial of a motion to suppress only “if the incorrect legal principle was applied; if there was no substantial evidence to support a voluntary, knowing, and intelligent waiver of Miranda, rights; and if the denial was a result of manifest error.” Scott v. State, 8 So.3d 855, 861 (¶ 22) (Miss.2008) (citation omitted). When making a factual inquiry into the voluntariness of a statement or confession, the circuit court must consider the totality of the circumstances, and where there is conflicting evidence on a confession’s admissibility, we will not disturb the findings of the circuit court unless they appear clearly contrary to the overwhelming weight of the evidence. O’Halloran v. State, 731 So.2d 565, 570 (¶ 18) (Miss.1999). As the voluntariness of a confession is a mixed question of law and fact, we “must conduct an independent review of the totality of the circumstances discoverable in the entire record in order to resolve the questioned validity of a confession or incriminating statements.” Coverson v. State, 617 So.2d 642, 647 (Miss.1993). A confession given as a result of promises, threats or inducements is not voluntary. Nelson v. State, 10 So.3d 898, 910 (¶ 52) (Miss.2009) (citation omitted). A confession is voluntary when, “taking into consideration the totality of the circumstances, the statement is the product of the accused’s free and rational choice.” Wilson v. State, 936 So.2d 357, 361-62 (¶ 8) (Miss.2006) (citation omitted).
A. Circuit Court’s Review of the Videotape
¶ 16. Tard argues the circuit court erred by failing to review the entire videotaped interrogation. Although the circuit *585 judge reviewed certain portions of the videotape, at no point did he watch the videotape in its entirety. It is not in the record which portion of the videotape the circuit court reviewed. However, it is clear the circuit court sought to review the portions of the videotape that focused on the alleged threats, misrepresentations, and promises made by Detective Martin.
¶ 17. As noted above, when assessing the voluntariness of a statement or confession, the circuit court must consider the totality of the circumstances. With that standard in mind, to be in the best position to consider the totality of the circumstances, the circuit judge should have reviewed the entire videotape of the interrogation. Here, the circuit judge asked if the relevant portions of the interrogation could be “isolated,” and trial counsel complied. Therefore, while we would have preferred the circuit judge to have reviewed the videotape in its entirety, we cannot find the circuit judge in error for a matter that was never presented to him. This Court “will not hold a trial court ‘in error on appeal for a matter not presented to it for decision.’ ” Moffett v. State, 49 So.3d 1073, 1101 (¶ 91) (Miss.2010) (quoting Mills v. Nichols, 467 So.2d 924, 931 (Miss.1985)). Because the circuit judge reviewed the evidence presented, we cannot find that he committed reversible error in doing so.
¶ 18. Tard further argues that the circuit court improperly characterized his statements to the police as a confession. He alleges that had the circuit court reviewed the entirety of the videotape, it would have found that no confession occurred. In addition, he argues that had the jury seen the videotape, it may have found that no confession occurred.
¶ 19. Black’s Law Dictionary defines a confession as a “criminal suspect’s oral or written acknowledgment of guilt, often in-eluding details about the crime.” Black’s Law Dictionary 338 (9th ed.2009). We find that ambiguity exists regarding whether Tard actually confessed during the interrogation. Although he provided certain details on the crime, it appears that most of these facts were provided to him by Detective Martin. Furthermore, his acknowledgments of guilt were offset by the numerous instances in which he proclaimed his innocence. While we find that questions exist regarding whether a confession was actually elicited, trial counsel never attempted to introduce the entire videotape for the circuit court’s or the jury’s review. Because the issue was never presented before the circuit judge, any claim for error is proeedurally barred from review. This issue is without merit.
B. Diminished Mental Capacity
¶ 20. Tard argues that because of his mental weakness and slow learning ability, he was unable to knowingly and voluntarily waive his Miranda rights. A defendant’s intelligence level and mental ability may be considered as important factors to determine the voluntariness of a confession, although these are factors to be considered as part of the totality of the circumstances. Brown v. State, 839 So.2d 597, 600 (¶ 10) (Miss.Ct.App.2003) (citation omitted). We will not disturb a circuit court’s findings of fact unless they are found to be clearly erroneous. Id. at 599.
¶ 21. At the suppression hearing, Tard’s aunt, Carol Ann Gaddis, testified that Tard suffers from ADD, was in special-education classes from seventh or eighth grade until he dropped out, had failed his GED twice, and had received some counseling from Charter Hospital and Brentwood Behavioral Healthcare after exhibiting behavioral problems in the ninth grade. The defense also introduced into evidence of one of Tard’s GED test *586 results, which showed that his scores ranged from the fourth percentile to the fourteenth percentile of graduating high-school seniors. Tard told investigators during the interrogation that he attended school through the eleventh grade, but he did not tell them anything about having been in special education. Tard also points to misspellings and grammatical errors on his job application as proof that the mistakes should have alerted the investigators that he had low educational skills. Nonetheless, Tard did not provide any medical evidence at the suppression hearing or at trial to support his claims.
¶ 22. After all of the evidence had been presented at the suppression hearing, the circuit court made the following remarks:
There is no proof before the court that [Tard] has diminished mental capacity. I observed him on that video for a few minutest,] and he appeared to me to be able to speak and respond to questions that were asked.... He completed [ten] years of school. Just here in court today he made a decision after he talked with his lawyer and with relatives that are here. He decided he wanted a trial and did not want to plead guilty to this offense. That was his independent decision. ... There is no medical diagnosis before this court.
Based on a thorough review of the record, we do not find that the circuit court erred in its determination of Tard’s mental capabilities. While Tard may have learning difficulties, we cannot find anything in the record to support Tard’s assertions that his diminished capacity caused him to make an involuntary confession. He never asked to speak with an attorney during the investigation, and the investigators testified that he appeared to understand their questions and their Miranda warnings. At no time during the interrogation did Tard ask to stop the questioning, or claim that he was ignorant of the proceedings.
C. Intentional Misrepresentations
¶28. Tard also claims that his diminished mental capacity caused him to be more susceptible to misrepresentations made by the police officers during the interrogation, rendering his confession inadmissible. At trial, Detective Martin testified that he made several misrepresentations in order to obtain a confession from Tard. Detective Martin claimed that the police had (1) video surveillance of Tard inside the hotel, showing that he passed a note to Bowden; (2) Tard’s fingerprints from the demand note; and (3) Tard’s fingerprints from the hotel counter. Detective Martin also told Tard that if he wanted to be able to see his unborn child, then he should cooperate with the police, and also gave Tard details about the crime, such as the demand note and Tard’s raising of his shirt to display the weapon. Detective Martin further implied that if Tard confessed, Detective Martin would inform the judge of the cooperation, although Detective Martin stated that he did not make any promises of leniency.
¶ 24. If an officer lies about evidence in his possession during an interrogation, that misrepresentation “is a factor to be considered when reviewing the voluntariness of the confession, [and] it should be viewed in the totality of the circumstances.” Baker v. State, 930 So.2d 399, 408 (¶ 17) (Miss.Ct.App.2005) (quoting Davis v. State, 551 So.2d 165, 169 (Miss.1989)). Therefore, Detective Martin’s misrepresentations regarding evidence linking Tard to the crime are relevant when determining the voluntariness of Tard’s confession. However, “[t]here is no requirement that law enforcement officials be absolutely honest when interrogating a suspect.” Howell v. State, 989 So.2d 372, 385 (¶ 37) (Miss.2008). “ ‘Ploys to mislead a suspect *587 or lull him into a false sense of security’ are permissible during police questioning, as long as they do not ‘rise to the level of compulsion or coercion.’ ” Id. (quoting Illinois v. Perkins, 496 U.S. 292, 297, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990)).
¶ 25. The circuit court did not find any evidence of coercion or promises of reward. The only statement that Detective Martin made that the court noted was Detective Martin’s statement to Tard that he could help himself by telling the truth. The circuit court noted, “It’s always better to tell the truth.... So, I’m not going to suppress the statements.” “[A] mere exhortation or adjuration to speak the truth will not exclude a confession.” Ruffin v. State, 992 So.2d 1165, 1172 (¶ 20) (Miss.2008) (citations omitted). With regard to Detective Martin’s misrepresentation about the evidence in his possession, Tard has failed to show that these misrepresentations rose to the level of compulsion or coercion. Therefore, we do not find reversible error in this regard. Accordingly, this issue is without merit.
II. JNOV/New Trial
¶ 26. Tard claims that the circuit court erred by denying his motion for a new trial, because without his confession, the weight of the evidence would not support the verdict. Although Tard also challenged the circuit court’s denial of his motion for a JNOV in his notice of appeal, he failed to address this issue in his appellate brief or provide support for this argument. We are not required to review an argument unsupported by cited authority. Alexander v. Womack, 857 So.2d 59, 62 (¶ 12) (Miss.2003). Therefore, we will address only Tard’s argument regarding a motion for a new trial.
¶ 27. A motion for a new trial challenges the weight of the evidence. Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005). Unless “[the verdict] is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice,” we will not disturb the circuit court’s denial of a motion for a new trial. Id. We weigh the evidence in the light most favorable to the verdict. Id.
¶ 28. In support of his final argument, Tard challenges the evidence and •testimony presented by the State’s witnesses. First, Tard contends that he does not have protruding teeth, which conflicts with Bowden’s depiction of the man who robbed her. At trial, Tard’s counsel questioned Bowden on the description she gave of Tard’s teeth as protruding. She explained that she meant that his teeth were “kind of sticking out probably a little more than somebody else’s.” He also argues that Griffin testified for the defense that the man she saw in the hotel was actually much shorter than Tard.
¶ 29. As we stated above, the circuit court did not err in admitting Tard’s confession to the robbery. During the presentation of its case-in-chief, the State reinforced Tard’s confession by presenting the jury with the evidence of Tard’s job application from Advanced Auto Parts, Bow-den’s pretrial and courtroom identifications of Tard as being the man who robbed her, and testimony from the investigating police officers. Although Tard denied involvement with the crime, his testimony merely created an issue of fact for the jury to decide. The jury has the power to weigh the credibility of witnesses. Gathright v. State, 380 So.2d 1276, 1278 (Miss.1980). As such, we find the verdict to be consistent with the evidence presented, and it does not constitute an unconscionable injustice. Accordingly, this issue is without merit.
*588 ¶ 30. THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT OF CONVICTION OF ARMED ROBBERY AND SENTENCE OF FORTY-FIVE YEARS, WITH THE LAST TEN YEARS SUSPENDED, AND WITH FIVE YEARS OF SUPERVISED PROBATION, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MADISON COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ROBERTS, CARLTON AND FAIR, JJ., CONCUR. MAXWELL, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. JAMES, J., NOT PARTICIPATING.

. Although there was testimony referencing Tard’s statements during his interview with police, neither Tard’s trial counsel nor the prosecutor ever sought to have the DVD of the interrogation admitted into evidence either during the suppression hearing or during trial.